81 So.2d 699

**OPINION OF THE JUSTICES.**

No. 147.

Supreme Court of Alabama.

July 20, 1955.

House Resolution No. 51.

Whereas, important constitutional questions are presented by House Bill No. 155 (a copy of which is attached hereto) now pending in the Legislature of Alabama:

Now, Therefore, Be It Resolved by the House of Representatives of Alabama that the Justices of the Supreme Court of Alabama are hereby respectfully requested to render their opinion as provided by Section 34 of Title 13 of the Code of Alabama of 1940 on the following important constitutional questions:

(1) Will the bill, if enacted, constitute a general law within the m⌐⌐ning of Section 110 of the Constitution o₁ Alabama?

(2) Does the bill contain but one subject and is that subject clearly expressed in its title as those terms are used in Section 45 of the Constitution of Alabama?

(3) Do the provisions of subsection (d) of Section 9 of the bill, which would authorize municipalities, regardless of population, to grant to authorities organized under the bill certain rights with respect to public streets therein for a period of time that may be in excess of thirty years, violate Section 228 of the Constitution of Alabama?

(4) Do the provisions of Sections 9(d), 22 and 24 of the bill, which authorize the state and certain political subdivisions thereof to grant certain permits and rights-of-way and ·to make certain conveyances to public tunnel authorities and to make studies with respect to the feasibility of tunnel projects proposed to be constructed by such tunnel authorities, violate Section 93, as amended, or Section 94 of the Constitution of Alabama?

(5) Would tunnel revenue bonds issued by a public tunnel authority organized under the provisions of the bill constitute (a) a debt, wtihin the meaning of Section 224 of the Constitution of Alabama, of the county consenting to the organization of such authority; or (b) bonds of such county or of a political subdivision of such county within the meaning of Section 222 of the Constitution of Alabama; or (c) a debt of the State of Alabama within the meaning of Section 213, as amended, of the Constitution of Alabama?

(6) In the event that your answer to question (3) or question (4) is "Yes", would such a constitutional violation invalidate the bill as a whole?

The House of Representatives
State Capitol
Montgomery, Alabama

Dear Sirs:

Before answering your six questions with reference to House Bill No. 155, it is necessary to give a short resume of the contents and purposes of the bill.

We have been favored with an amici ·curiae brief which we think adequately summarizes the pertinent provisions of the bill and from which we quote:

"The bill first contains a legislative finding that hazardous, unsafe and congested traffic conditions exist in areas of the state having a high degree of population concentration. Following this finding is a declaration that in order to relieve such conditions and to promote traffic safety there is a necessity for the construction of modern tunnel vehicular facilities in such areas. The bill then proceeds to authorize and specify the procedure for the incorporation of one or more tunnel authorities as public corporations in each county of the state having a population of 400,000 or more, accord-

ing to the last or any succeeding federal census.

"The bill provides that the county in which each such authority is organized and, in certain instances, one or more municipalities in such county are entitled to what may be termed representative membership on the board of directors of such authority. If the governing bodies of the county and municipalities so entitled to representation on the board have statutory departments of public works or public improvements then those members of such governing bodies acting as heads of such departments are automatically the representatives of such county and municipalities on the board. On the other hand, if such county or municipality has no such department, then its governing body selects from its own membership its representative on the board. The bill also specifies that the division engineer for that division of the State Highway Department in which the organizing or parent county is located shall be a member of the board. Provision is also made for the appointment of two public members to the board of each authority organized under the bill.

"The usual corporate powers incident to public corporations of this nature are then bestowed on each authority organized under the bill. The substantive powers granted relate primarily to the construction and financing of tunnel facilities and to the regulation of traffic thereon. The financing is authorized to be done by the sale of revenue bonds payable solely out of the revenues from the operation of the tunnel facilities. Public sale of such bonds is required. Each authority organized under the bill is given the power to fix tolls for use of any tunnel owned by it. While the bill expressly exempts from Public Service Commission and other regulatory jurisdiction such tolls and other affairs of each authority organized thereunder, it does contain a restriction

263 Ala.—12

on the power of an authority to charge tolls for the use of a debt-free tunnel project. The bill further authorizes the state and various political subdivisions thereof to grant to any such authority certain rights and powers with respect to public roads and streets.

"Each authority organized under the bill is empowered to compel the relocation or removal of utility facilities necessary for the construction of tunnel projects; the costs of such relocation or removal are, however, required to be paid by the authority requiring the same. Each such authority is also empowered to promulgate reasonable rules regulating traffic in its tunnel projects; these rules, it is provided, supersede any state or local government rules and regulations insofar as those projects are concerned.

"The bill further provides that when a tunnel project constructed pursuant to the authority of the bill is debt-free, it may be transferred to the highway department for toll-free operation by such department. The bill authorizes the state and certain agencies and political subdivisions thereof to make studies with respect to the feasibility of proposed tunnel projects and provides for the authority's reimbursement of the expenses incurred in making such studies out of the proceeds from the sale of bonds."

We now pass to a consideration of the questions.

■ (1) We are of the opinion that the bill is general and not local within the meaning of § 110 of the Constitution. We note that generally classifications of counties according to a minimum population (as distinguished from classifications based on maximum and minimum) are upheld. It has been stated that the test of substantial difference in population applies "primarily" to acts setting up a classification with a minimum and maximum limit of population. State ex rel. Shirley v. Lutz, 226 Ala. 497, 147 So. 429. Our attention has been called to only two cases declaring

acts with only a minimum basis of population to be local and not general. The first of these was City of Birmingham v. Moore, 248 Ala. 422, 27 So.2d 869. That act had the effect of prohibiting public housing projects in counties having a population of more than 300,000. The act itself contained a legislative finding that in such counties private enterprise was unable to cope with housing problems. This court said that there was no reasonable relation between the classification and the object sought to be attained by the act. In other words, it was not a reasonable classification to prohibit public housing only in those counties that needed it most.

The other case is Nelson v. State, 255 Ala. 141, 50 So.2d 401, 402. The act involved in that case applied to counties having a population of over 400,000 and provided for the condemnation of automobiles used in the storage of lottery papers. In declaring that act to be local, this court said that "the legislature should be solicitous to aid in enforcing that statute [Title 14 § 275] in all parts of the State and not more so in centers of large population. The same considerations apply to such effort in all parts of the State alike so far as we can see." In Opinion of the Justices, 249 Ala. 511, 31 So.2d 721, this court recognized that counties having a population of over 400,000 might have traffic problems distinct from those of counties with less population. Concluding therefore that the population spread is substantial and that the purpose bears a reasonable relation to such classification, we will not inquire into the legislative intent. Opinion of the Justices, 249 Ala. 511, 31 S.2d 721.

■ (2) It is our opinion that the Bill contains but one subject and does not violate § 45 of the Constitution. See Brammer v. Housing Authority of Birmingham District, 239 Ala. 280, 195 So. 256; Rogers v. Garlington, 234 Ala. 13, 173 So. 372.

■ (3) Subsection (d) of Section 9 of the Bill provides that the state, county, or any municipality in such county may grant to the authority the right to take over and use any road constituing an access to a tun-

nel, or to change the location, line or grade of such road, or to improve such road without taking it over and "any other rights, powers, permits and franchises that the authority may reasonably request in furtherance of its corporate purposes." Such grants are to last as long as the tunnel bonds are outstanding. The question presented is whether or not this provision violates § 228 of the Constitution, which provides:

"No city or town having a population of more than six thousand shall have authority to grant to any person, firm, corporation, or association the right to use its streets, avenues, alleys, or public places for the construction or operation of water works, gas works, telephone or telegraph line, electric light or power plants, steam or other heating plants, street railroads, or any other public utility, except railroads other than street railroads, for a longer period than thirty years."

If the State of Alabama or a county undertook directly the construction and maintenance of a tunnel according to the provisions of the proposed act, there would apparently be no question as to the need of the other political entities to grant it such powers or rights as are described in subsection (d). Section 228 does not relate to the power of a municipality in respect to the use of a public road by the state or one of its instrumentalities, including a public corporation created by it. We would be most hesitant, then, to hold that such attempted grants would be invalid because a public corporation is formed to facilitate the construction of the project and issuance of the bonds. We think that the doctrine of *ejusdem generis* applies to § 228 and that the term "other public utility" includes only such utilities within the class enumerated in the section. Those enumerated are such as organized for profit and perform services distinct and different from those that would be rendered by such a traffic tunnel. We conclude that the stated provision does not violate § 228 of the Constitution.

■ (4) It is our opinion that the Bill does not violate §§ 93 and 94 of the Consti-

tution. These sections apply only to private corporations. See Alabama State Bridge Corp. v. Smith, 217 Ala 311, 116 So. 695.

(5) Bonds issued by the tunnel authority would not be a debt of the county consenting to the organization of the authority within the meaning of §§ 222 and 224 of the Constitution. See Amendment to the Constitution proposed by Act No. 525 of the 1953 Legislature, p. 733, and ratified by the electorate.

The debt represented by the bonds would not be a debt of the State of Alabama within the meaning of § 213, as amended. Opinion of the Justices, 254 Ala. 506, 49 So.2d 175.

(6) The answer to this inquiry is No.

Respectfully submitted,

J. ED LIVINGSTON
Chief Justice
THOMAS S. LAWSON
ROBERT T. SIMPSON
DAVIS F. STAKELY
JOHN L. GOODWYN
PELHAM J. MERRILL
JAMES J. MAYFIELD
Justices.