274 So.2d 33

**R. E. MASTERS et al.**

v.

**Marcia Smolian PRUCE et al.**

**6 Div. 942.**

Supreme Court of Alabama.

Feb. 8, 1973.

Dale Corley, Birmingham, for appellees.

John T. Roach, Jr., Birmingham, for appellants.

BLOODWORTH, Justice.

This case was originally assigned to another justice. It was reassigned to the writer for the preparation of an opinion for the court. On rehearing, the application for rehearing is granted, and the original opinion, prepared by the writer, is withdrawn and the following opinion substituted therefor.

Appellants filed a bill of complaint in the circuit court of Jefferson County, in equity, seeking to obtain a permanent injunction against appellee, James E. Norris, as Zoning Administrator of Jefferson

County, to restrain him from issuing a building permit for the construction of an apartment complex on a tract of real property, lying within the police jurisdiction of the City of Vestavia Hills but outside its corporate limits. The bill also prayed that the court declare Acts 1177 and 1178 of the Alabama Legislature, approved September 13, 1969, General Acts of 1969, unconstitutional, and that the court determine that the Jefferson County Commission, the Jefferson County Board of Zoning Adjustment, and the Jefferson County Planning and Zoning Commission were without authority to change the zoning classification of the property, and for other, further and different relief to which they might be entitled.

The appellants are owners of residential dwellings near the property in question, the latter tract being owned by the appellees, Isadore Pizitz, John H. Jacobson and Marcia Smolian Pruce. Appellee, Stuart W. Gaines, is the party who filed the rezoning petition.

Prior to September 13, 1969 (the date when Acts 1177 and 1178 became effective), the City of Vestavia Hills, Alabama, exercised zoning jurisdiction and control over the property in question. It was zoned R–2.

Sometime after that date, Jefferson County commenced to exercise zoning over this property.

The zoning classification of the tract was changed from R–1, residential district, and C–1, commercial district (its previous county zoning classifications) to R–4, multiple dwellings, by a resolution of the Jefferson County Commission adopted on May 25, 1971.

The pertinent portions of the acts in question are as follows:

"Act No. 1177
" * * *

"Section 1. Definitions: For the purposes of this Act, certain terms are defined as follows:

" 'County' shall mean any county of this state having a population of 600,000 or more according to the 1940 federal census or any succeeding decennial federal census.
" * * *

"Section 2. Any county which has heretofore or shall hereafter adopt zoning regulations shall have exclusive jurisdiction over all matters relating to such zoning within all areas of the county not lying within the corporate limits of any municipality in such county. From and after the adoption by the county of such zoning regulations, any and all jurisdiction of any municipality as to any area outside its corporate limits as to any matter relating to zoning is and shall be withdrawn and taken away.
" * * *

"Section 5. All laws or parts of laws in conflict with this Act are hereby superseded.

"Section 6. If any section, provision, sentence or phrase of this Act shall be declared unconstitutional, or void for any reason, such adjudication shall not affect any other provision hereof, and the remainder thereof shall be left intact and valid.

"Section 7. This Act shall become effective immediately upon its passage and approval by the Governor, or upon its otherwise becoming law.

"Approved September 13, 1969.

"Time: 4:42 P.M."

"Act No. 1178
" * * *

"Section 1. The title of Act No. 344, H. 775 of the Regular Session of 1947 (General Acts 1947, p. 217) is hereby amended

to read as follows: 'An Act to empower any counties having a population of 400,000 or more according to the 1940 or any succeeding federal census to provide for, regulate, and restrict in the unincorporated portions of the county including that area lying outside the corporate limits of the municipalities of the county but within the police jurisdiction of such municipalities, the use and construction of buildings, structures and land for trade, industry and residence; to establish set-back lines for buildings and structures along the roads and streets; to prescribe certain duties and functions of the county planning commissions; to provide for county boards of zoning adjustment and define the authority, powers, and functions of such boards, and procedure and appeals from their decisions; and to provide remedies for the enforcement of ordinances, resolutions, and regulations made by such counties under authority of this act.'

"Section 2. Section 1 of said Act No. 344 of the Regular Session of 1947, as heretofore amended, is further amended to read as follows:

" 'Section 1. For the purpose of promoting health, safety, morals, or the general welfare of the county, the governing body of any county having a population of 400,000 inhabitants or more according to the 1940 or any succeeding decennial Federal census, (herein called the "County"), is hereby empowered to regulate and restrict the use and construction of buildings, structures and land for trade, industry and residence; and to establish setback lines for buildings and structures along the roads and streets in the unincorporated areas of the county including all areas within the police jurisdiction of any incorporated municipality even the area within the police jurisdiction of a municipality over which the governing body of such municipality is exercising zoning jurisdiction and control when this amendment becomes effective; and all the rights, powers and authority relative to zoning in such

areas heretofore vested in any municipality in any such county having a population of more than 400,000 according to the most recent federal decennial census is hereby withdrawn and taken away.'

"Section 2. This Act shall become effective immediately upon its passage and approval by the Governor, or upon its otherwise becoming a law.

"Approved September 13, 1969.

"Time: 4:42 P.M."

In its final decree, the trial court held both acts were valid, constitutional, and that "the legislative intent and the statutory effect" of Acts 1177 and 1178 were to repeal and supersede prior legislative enactments in conflict with them.

I.

■ Appellants insist, in brief, that Act 1178 did not amend all the sections of Act 344 of the Alabama Legislature, approved August 15, 1947, General Acts of 1947, as amended last on August 16, 1949 (appears as §§ 970–974, Appendix, Vol. 14, Code of Alabama), necessary to accomplish its stated purpose.

By Act 1178 only the title and Section 1 of Act 344 were amended. Act 1178 did not amend Section 4 of Act 344, as amended in 1949, which provides as follows:

"Section 4. *Method of Procedure.*— The governing body of the county may, by resolution or order, exercise the powers granted to it in Section 1 of this Act, for the entire unincorporated area of the county, excluding part or all of any areas within the police jurisdiction of any incorporated municipality over which the governing body of such municipality is either already exercising zoning jurisdiction and control, or shall actively exercise zoning jurisdiction and control within 180 days after the effec-

tive date of this act, or in the case of a municipality subsequently incorporated, within 180 days from the date of its incorporation. Before enacting any such resolution or order, the governing body shall hold a public hearing thereon, at least fifteen days' notice of which shall be published in a newspaper of general circulation within the county. Such publication shall include the time and place of said hearing, but shall not be required to include the text or further description of said resolution or order if the county has already taken action in accordance with Section 5 of this Act. No change in, or departure from, the text or maps of the zoning resolution or order shall be made, unless such change or departure receive the favorable vote of a majority of the entire membership of the governing body. All such resolutions or orders, including maps, and all amendments, supplements, changes, modifications and repeals of such resolutions or orders shall be filed in the office of the Judge of Probate of the county, and shall there, as well as in the offices of the governing body of the county, be open to public inspection, free of charges."

Thus, it can be readily seen that Section 1 of Act 344, as previously amended in 1949 and as amended by Act 1178, and Section 4 of Act 344, as amended in 1949, are in direct conflict with each other. Section 1, as amended by Act 1178, purports to grant any such county the power to exercise zoning in the unincorporated areas of the county, including all areas within the police jurisdiction of any incorporated municipalities and withdraws that power from any incorporated municipalities. On the other hand, Section 4 excludes such areas in the police jurisdiction of incorporated municipalities from county zoning where these municipalities are exercising such power.

Section 4 of Act 344, as amended, contains the implementing legislation necessary to exercise the powers granted to the counties in Section 1; Section 1 being a grant of powers.

In Opinion by the Justices, 249 Ala. 88, 30 So.2d 14 (1947), it was stated that:

"It is a well recognized rule of law that in the enactment of statutes reasonable precision is required. Indeed, one of the prime requisites of any statute is certainty, and legislative enactment may be declared by the courts to be inoperative and void for uncertainty in meaning. This power of the court may be exercised where the statute is so incomplete, so conflicting or so vague and indefinite, that the statute cannot be executed *and the court is unable by the application of law and accepted rules of construction to determine what the legislature intended by any reasonable degree of certainty*. Many illustrative cases are cited in the note to the text 50 Am.Jur. § 472. Like observations are to be found in 59 C.J. 601." (Emphasis ours)

Appellants would have us follow this rule of statutory construction and declare that, by virtue of the conflict between its own provisions, Act 344, as amended, is inoperative and void.

On our first analysis, it was our judgment that this opinion, as well as our decision in Dewrell v. Kearley, 250 Ala. 18, 32 So.2d 812 (1947), compelled our finding the act to be inoperative and void. We are now persuaded we must reach a different conclusion as will hereinafter appear.

In Dewrell v. Kearley, supra, this court was confronted with an act which was designed to abolish bills of exceptions in this state. The act allowed ninety days, after the taking of an appeal, for filing the transcript of the evidence with the clerk. The act also provided that, after such filing, either party could file objections to the transcript within ten days, after which an additional period of fifteen days was allowed for the trial judge to hear the objections. The trial judge was then given fifteen

days to settle the objections. Thus, forty days were allowed for this procedure, but the act provided that the hearing should be completed within ninety days from the date of the trial or the date of the judge's ruling on motion for new trial. This court held, viz:

"The inconsistencies are quite manifest. While this maximum of forty days is allowed for the filing and settling of the objections after the transcript has been filed, the reporter may file the transcript at any time within the ninety-day period, yet the entire procedure must be completed within the same ninety days. This under [sic] conditions would be impossible of execution."

It was further stated by this court that,

" * * * by these several inharmonious provisions, the act is rendered impossible of execution, of consequence of which it becomes our duty, though we regret the necessity of so doing, to declare it inoperative and void. * * *"

Since our original opinion in this case was released, we have received an application for rehearing filed by appellees and a brief in support thereof. Appellants have filed a brief in support of our opinion.

Additionally, we have received applications from ten law firms seeking permission to file amicus curiae briefs in support of appellees' position. We granted each of these applications and each has responded by filing a brief. One law firm has filed an amicus curiae brief in support of our original opinion.

We have carefully read, studied and considered each brief and each contention presented on rehearing, as we did on original submission. Several cases are cited on rehearing of which we did not have the benefit on original submission and which our independent research did not disclose. After mature consideration, we have concluded that at least one of the contentions on rehearing is well taken, and that we must uphold Act 344, as amended in 1949 and as amended by Act 1178, under the doctrine of "implied repeal."

We now consider that the *Dewrell* case, supra, is not apposite, because in that case the court was confronted with a situation in which it was unable to ascertain the intent of the legislature. Moreover, the provisions of the act in that case were impossible of execution. This is not true in the case at bar, as we shall presently demonstrate.

The doctrine of "implied repeal" is advanced as an answer to appellants' arguments that Act 1178 is inoperative and void because of the inconsistency and conflict between amended Section 1 and Section 4. In substance, it is contended that those inconsistent and conflicting provisions of Section 4 were repealed by implication so as to permit Act 344, as amended by Act 1178, to be upheld.

The case of State v. Bay Towing and Dredging Company, 265 Ala. 282, 90 So.2d 743 (1956), is cited as authority for this proposition. This case was neither cited to us on original submission, nor did we, in our independent research, locate it. We are now convinced, however, that both its rationale and holding govern us in our determination as to the validity of Act 1178, and that we must uphold the act on its authority.

In the *Bay Towing* case, supra, the late Mr. Justice Goodwyn, writing for the court, expressed the doctrine of "implied repeal" thusly:

"In Alabama, the law governing implied repeals is well-settled and the cases on this point are singularly consistent. See 18 Ala.Dig., Statutes, ☞159 & 160. A concise statement of the rule is contained in City of Birmingham v. Southern Express Co., 164 Ala. 529, 538, 51 So. 159, 162:

'Repeal by implication is not favored. It is only when two laws are

so repugnant to or in conflict with each other that it must be presumed that the Legislature intended that the latter should repeal the former. * * *'

"Implied repeal is essentially a question of determining the legislative intent as expressed in the statutes. Ex parte Jones, 212 Ala. 259, 260, 102 So. 234. When the provisions of two statutes are directly repugnant and cannot be reconciled, it must be presumed that the legislature intended an implied repeal, and the later statute prevails as the last expression of the legislative will. Union Central Life Insurance Co. v. State, 226 Ala. 420, 423, 147 So. 187; Fidelity & Deposit Co. of Maryland v. Farmers' Hardware Co., 223 Ala. 477, 479, 136 So. 824."

The facts of that case are so singularly relevant to those in the case at bar that it may be stated it is an almost, if not altogether, "all-fours" case.

We state briefly its pertinent facts.

The levying section of Title 51, Section 788 (the "use tax" law) provided:

"(b) An excise tax is hereby imposed on the storage, use or other consumption in this state of *any automotive vehicle* purchased at retail * * *." (Emphasis ours)

Title 51, Section 789, as amended in 1949, provided for an exemption from the operation of this use tax as to:

"(u) *Used automotive vehicles.*" (Emphasis ours)

The aforesaid Title 51, Section 788, was amended in 1951 to provide as follows:

"(b) An excise tax is hereby imposed on the storage, use, or other consumption in this state of *any new or used automotive vehicle,* truck trailer or semi-trailer purchased at retail * * *." (Emphasis ours)

There was no amendment of Title 51, Section 789 (u), supra, at that time.

It is obvious that subsection (u) of Section 789 (exempting used vehicles) was repugnant to the 1951 amendment of Section 788 (levying on used vehicles). The two provisions were directly in conflict and could not be reconciled. This court held that subsection (u), exempting used vehicles, was impliedly repealed by the enactment of the later 1951 amendment, levying the tax on used vehicles.

The court followed the rule that:

"* * * When the provisions of two statutes are directly repugnant and cannot be reconciled, it must be presumed that the legislature intended an implied repeal, and the later statute prevails as the last expression of the legislative will. * * *"

The court went on to hold:

"Before the 1951 amendment, the use tax was levied on 'any automotive vehicle', subject to the specific exemption of 'used automotive vehicles' contained in another section. The amendment changed the wording of the levying section to read 'any new or used automotive vehicle'. It is pointed out by cross-appellant that 'any automotive vehicle' was already a comprehensive phrase including all types. However, the insertion of the words 'new or used' must have had some purpose other than mere redundancy; the legislature must have intended some change in the meaning of the phrase. The only reasonable construction is that the legislature intended that thereafter the use tax should apply specifically to used as well as to new automotive vehicles. * * *"

We are cognizant of the principle of law that repeal by implication is not favored.

Nevertheless, we must also recognize the cardinal rule of statutory construction, to which all others are subordinate, that we

must ascertain and give effect to the true intent of the legislature in enacting a given statute. In re Opinion of the Justices, 267 Ala. 114, 100 So.2d 681 (1958).

Thus, we cannot but otherwise conclude, from a study of the title of the act and the amendment to Section 1 (as well as the simultaneous passage of Act 1177), that the intention of the legislature in enacting Act 1178 and Act 1177 was to grant to counties with such population classification county-wide zoning in the unincorporated areas of the county, including those areas lying within the police jurisdiction of incorporated municipalities and, notwithstanding some of those municipalities may have previously exercised zoning jurisdiction in the affected areas. It seems, also, that its clear intention, in the passage of this act, was to take away from the affected municipalities the power to zone in those areas within their police jurisdiction. It must be presumed that the legislature, in enacting Act 1178, overlooked enacting a provision amending Section 4, so as to have it conform to the amendment of Section 1.

Thus, under the authority of State v. Bay Towing & Dredging Company, supra, we must conclude that, by the enactment of Act 1178 amending Section 1 of Act 344, as previously amended, the legislature "impliedly repealed" the last clause in the first sentence in Section 4 of Act 344, as previously amended, to-wit:

"excluding part or all of any areas within the police jurisdiction of any incorporated municipality over which the governing body of such municipality is either already exercising zoning jurisdiction and control, or shall actively exercise zoning jurisdiction and control within 180 days after the effective date of this act, or in the case of a municipality subsequently incorporated, within 180 days from the date of its incorporation."

## II.

Appellants further insist that Act Number 1177 contained no enabling legislation ("Method of Procedure") such as appears in Section 4 of Act 344, as amended; and thus, the Jefferson County Commission could not under Act 1177, proceed to pass a resolution which would validly and effectively change the zoning classification of property located within the police jurisdiction of Vestavia Hills, Alabama.

Act 1177 does not contain an implementing clause similar to the one in Act 344, wherein provisions are made for notice and hearing to affected property owners of the proposed zoning change.

In Anderson's American Law of Zoning, the rule is stated:

"* * * [A] statute or ordinance which fails to require legislative notice and a hearing prior to the enactment of a zoning ordinance may be regarded as invalid for failure to require procedure which comports with due process of law." Anderson, American Law of Zoning, Vol. 1, § 4.03 at p. 159.

The following later appears in the same volume of Anderson on Zoning:

"* * * In the case of a zoning ordinance, a notice of hearing to a property owner may be required by the due process clauses of the state and federal constitutions. In fact, an enabling act which did not require notice was said to deprive a landowner of his property without due process of law. It is a procedural step essential to the validity of legislative action. While the legislative authority has the power to enact or amend zoning regulations, affected property owners have the right to be heard on the specific matter under consideration. Failure of the legislative body to conduct an appropriate hearing, after notice which affords a fair opportunity to be heard, will render the regula-

tion invalid. * * *" Anderson, American Law of Zoning, Vol. 1, § 4.11, pp. 168–169.

In Sikes v. Pierce, 212 Ga. 567, 94 S.E. 2d 427 (1956), the Supreme Court of Georgia was confronted with a situation similar to that in the case at bar. There, the charter of the City of Dublin, Georgia, authorized the mayor and aldermen of the city to adopt, by zoning ordinances, a plan or plans for the zoning or districting of the city. Neither the charter of the city, nor any of the zoning ordinances adopted thereunder, provided for any notice or opportunity for a hearing to be given to persons whose property would be affected by the zoning regulations.

The court in Sikes v. Pierce, supra, held, inter alia:

"Due process of law, as guaranteed by article I, section I, paragraph III, of the Constitution, Code Ann. § 2–103, includes notice and hearing as a matter of right in matters where one's property rights are involved. (Citations omitted), and 'It is a prerequisite to the validity of a municipal ordinance that notice be given and an opportunity for a hearing be accorded to any one who has an interest or property right in the property which may be affected by the zoning regulation.' (Citations omitted)

"Where, as here, neither the charter of the municipality, which purports to authorize the city to adopt by ordinances a plan or plans for the districting or zoning of the city, nor any of the zoning ordinances adopted under and pursuant to such charter provision, provide for any notice to or opportunity for a hearing to be accorded to any one having an interest or property right in the property affected by the zoning regulation, they are violative of and contravene the constitutional provisions above referred to, and are therefore null and void."

Similarly, the Supreme Court of California, in Gilgert v. Stockton Port Dist., 7 Cal.2d 384, 60 P.2d 847 (1936), struck down as void and unconstitutional an act creating a port district, in part because the port district was given zoning powers by the act, but no provisions for notice and hearing were included within the act.

The court there stated:

"Zoning is the deprivation, for the public good, of certain uses by owners of property to which their property might otherwise be put, but before the owner may thus be deprived of his property and the enjoyment thereof he is entitled to adequate notice and a hearing thereon.

"In Berrata v. Sales, 82 Cal.App. 324, 255 P. 538, 540, the court said: 'It needs no citation of authority to support the statement that notice of the proposed passage of a zoning ordinance limiting the use of property which, otherwise, naturally attaches to the property in question is a substantial matter and is one of which property owners are entitled to notice. The property owner, as has been so frequently said in other cases, is entitled to have his day in court.' "

To like effect are our Alabama cases with respect to the meaning of "due process" in similar fact situations. In the case of Alabama Alcoholic Beverage Control Board v. State, 247 Ala. 469, 471, 25 So.2d 30, 32 (1946), this court held, viz:

"It is established * * * that the constitutional guarantee of due process of law means notice and opportunity to be heard, and to defend, before a competent tribunal vested with jurisdiction of the subject-matter of the cause. * * *"

See also Cooper v. Watts, 280 Ala. 236, 191 So.2d 519 (1966).

It is suggested that the legislature intended Section 4 of Act 344, as amended, to provide the implementing legislation for Act 1177, since Act 1177 and Act 1178 were passed as so-called "companion bills," were read and passed at the same time, and had

as sponsors the same members of the House of Representatives. There is nothing in either act upon which to base such a conclusion. Nor, can Section 4 of Act 344, as amended, be utilized to carry out the grant of powers contained in Act 1177, because Acts 344 and 1178 are based on different population classifications and the provisions of Acts 1177 and 1178 are different though, in part, they each deal with zoning.

Additionally, we have ourselves conducted a search of prior acts of the legislature in order to determine whether the powers granted to counties by Act 1177 could be exercised under some existing legislative enactment which does provide for notice and hearing in such situations. We have been unable to find any such act.

Therefore, as Act 1177 does not provide for affected property owners to have notice and an opportunity to be heard, and, as our research has disclosed no legislation which would operate to save the act in such a situation, it must be concluded, and we hereby declare, that Act 1177 is void and inoperative for failing to require procedure which comports with due process of law.

### III.

Next, we address ourselves to the contention that the record does not reflect that the attorney general of the State of Alabama was served in the declaratory judgment proceeding which contested the validity of these two acts, and that this court is required to dismiss this proceeding on appeal for want of jurisdiction.

Appellees cite Title 7, Section 166, Code of Alabama, which states as follows:

" * * * if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney-general of the state shall also be served with a copy of the proceeding and be entitled to be heard."

Though this issue was raised for the first time on rehearing, this court has held that service on the attorney general is jurisdictional and that we must note our want of jurisdiction apparent on the record. Board of Trustees of Employees' Retirement System v. Talley, 286 Ala. 661, 244 So.2d 791 (1971) and cases cited therein.

On the other hand, appellants cite the provisions of Rule 25 of the Supreme Court Rules, which reads in pertinent part as follows:

"Unless some particular question is raised in respect thereto and decided in the primary court, the transcript, whether in a civil or criminal appeal, shall not contain in any instance: (a) subpoenas or summons for any witness, or for any defendant where there is an appearance for such defendant; * * *."

We will not attempt to resolve any apparent conflict between our Rule 25 and the rule of *Talley,* supra. For, we note that, although the record does not reflect whether the attorney general was served, on pages 23 and 24 of the transcript the following pleading appears:

"ANSWER INCORPORATING DE-
MURRER

"Now comes the respondent, William J. Baxley, as Attorney General of the State of Alabama, and incorporates in this his answer a demurrer to the bill of complaint on the following separate and several grounds to-wit:

"1. There is no equity in the bill of complaint as to him.

"2. There are no facts averred which show that this respondent is either a necessary or proper party respondent.

"3. Title 7, Section 166, Code of Alabama 1940, Recompiled 1958, only requires that this respondent receive notice of a declaratory judgment proceedings, and does not require that he be made a party respondent.

"And now for answer to the bill of complaint, this respondent avers that he

is without sufficient information to enable him to either admit or deny the allegations of the complaint with the exception that he admits that he is the Attorney General of the State of Alabama; that he is neither a necessary or proper respondent to this litigation; that he verily believes that the case will be properly handled and presented by the attorneys for the complainants and the other respondents to this cause.

"Now having answered, this respondent prays that he may be dismissed as a party respondent to the bill of complaint.

William J. Baxley
WILLIAM J. BAXLEY as Attorney General of Alabama

Gordon Madison
GORDON MADISON, as Assistant Attorney General of Alabama

Filed in Office Jul 1, 1971"

Appellants have filed a motion, which, inter alia, requests that we order the register to amend the transcript to reflect that, in fact, the attorney general was served. A purported copy thereof is attached to the motion. (Of course, we cannot consider this purported copy under our rules.)

Since there was an appearance by the attorney general, the foregoing answer and demurrer being filed by him, we see no need for the transcript to reflect service on him. After all, the purpose of the provisions of Title 7, Section 166, is to give notice of the filing of the bill. The attorney general unquestionably has had notice of the bill, contesting the validity of the two acts in question, else he is not likely to have responded by filing the pleading set out above.

## IV.

Finally, appellants urge that Acts 1177 and 1178 are unconstitutional because they are local laws which have not been advertised as required by Section 106 of the Alabama Constitution of 1901. Since we have already determined that Act 1177 is void and inoperative for another reason, we pretermit discussion of this issue with regard to that act.

Section 110 of the Alabama Constitution of 1901 defines the terms "general law" and "local law" as follows:

"A general law within the meaning of this article is a law which applies to the whole State; a local law is a law which applies to any political subdivision or subdivisions of the State less than the whole; * * *."

■ Thus, the question for determination is whether Act 1178 is a general law or a local law, as defined by this section. If Act 1178 is a local law, then it is void because it was not advertised as required by Section 106 of the Constitution. Smith v. Lancaster, 269 Ala. 579, 114 So.2d 568 (1959).

■ A law which is based on a population classification may be enacted as a general law under limited conditions, even though the law in its application applies to only one political subdivision of the state. Smith v. Lancaster, supra, and authorities therein cited.

■ In order for such a law based on a population standard which applies to only one political subdivision to be upheld as a general law, the difference in population must be substantial, the classification must be made in good faith by the legislature, and the classification must be reasonably related to the purpose sought to be achieved by the act. City of Birmingham v. Moore, 248 Ala. 422, 27 So.2d 869 (1946).

■ This court judicially knows that Act 1178 could only apply at this time to Jefferson County, as it is the only county in this state with a population of over 400,000.

In Couch v. Rodgers, 253 Ala. 533, 45 So.2d 699 (1950), this court held:

"We have numerous cases which bring out that application of the principle wherein it was observed that counties of large population may reasonably be supposed to be differently served in many respects than counties of smaller population and there is sometimes drawn a distinction between a classification based upon a minimum population and a classification based upon a population with both a minimum and a maximum limit. The case of State ex rel. Shirley v. Lutz, 226 Ala. 497, 147 So. 429, brings out that distinction. That case was dealing with an act regulating the business of plumbing in counties having a population of 100,000 or more according to the last or any subsequent federal census. The Court emphasized the different principles applicable when there is only a minimum but not a maximum number. When there is only a minimum, the Court thought a more liberal application of the principle should be made. In the case of Ex parte Ashton, 231 Ala. 497, 165 So. 773, 104 A.L.R. 54, there was only a minimum upon which the classification was based. The Court in that case did not see fit to analyze the question of whether the classification bore relation to the matter sought to be effected. Whereas in most of the other cases where there is only a minimum basis the Court has anlayzed the situation for the purpose of showing that in the larger counties there is reason which the legislature may assume existed for making the change different from the counties of less population and observing that in making a classification there has to be a limit somewhere for its effect, although some counties may nearly reach that limit without doing so. (Citations omitted)"

With reference to the tests heretofore set forth in City of Birmingham v. Moore, supra, it was stated in Opinion of the Justices, 263 Ala. 174, 81 So.2d 699 (1955):

"* * * the test of substantial difference in population applies 'primarily' to acts setting up a classification with a minimum and maximum limit of population. (Citations omitted) * * *"

Nevertheless, we think the difference in population here was substantial.

Additionally, we believe that the classification was made in good faith by the legislature. There is certainly nothing to the contrary in the record.

Further, we hold that the classification is reasonably related to the purpose sought to be achieved by the act, as will be hereinafter discussed.

In our research, we have found twenty cases which dealt with acts based upon population classifications which applied at the time of their passage to Jefferson County only. In fifteen of these cases, this court held that the acts were general laws and were not violative of the Alabama Constitution. These were: Board of Revenue of Jefferson County v. Huey, 195 Ala. 83, 70 So. 744 (1916); State v. Burchfield, 218 Ala. 8, 117 So. 483 (1928); State ex rel. Russum v. County Commission of Jefferson County, 224 Ala. 229, 139 So. 243 (1932); State ex rel. Ward v. Henry, 224 Ala. 224, 139 So. 278 (1932); Wages v. State, 225 Ala. 2, 141 So. 707 (1932); State ex rel. Dally v. Woodall, 225 Ala. 178, 142 So. 838 (1932); City of Birmingham v. Wheeler, 225 Ala. 678, 145 So. 140 (1932); State exl rel. Shirley v. Lutz, 226 Ala. 497, 147 So. 429 (1933); Cooper v. State ex rel. Hawkins, 226 Ala. 288, 147 So. 432 (1933); Ex parte Ashton, 231 Ala. 497, 165 So. 773 (1936); Opinion of the Justices, 249 Ala. 511, 31 So.2d 721 (1947); Opinion of the Justices, 263 Ala. 174, 81 So.2d 699 (1955); Opinion of the Justices, 270 Ala. 38, 115 So.2d 464 (1959); Smith v. Pullman Incorporated, 280 Ala. 295, 193 So.2d 516 (1967); Opinion of the Justices, 281 Ala. 50, 198 So.2d 778 (1967). Additionally, an act with a 110,000 standard of population which applied to both Jefferson and Mobile Counties was held general in

Dearborn v. Johnson, 234 Ala. 84, 173 So. 864 (1937).

The five cases in which it was held that the acts were local laws and violative of the Alabama Constitution, because they were passed without the required publication, were: Jefferson County v. Busby, 226 Ala. 293, 148 So. 411 (1933); City of Birmingham v. Moore, 248 Ala. 422, 27 So.2d 869 (1946); Nelson v. State, 255 Ala. 141, 50 So.2d 401 (1951); McDowell v. Columbia Pictures Corp., 281 Ala. 438, 203 So.2d 454 (1967); Duncan v. Meeks, 281 Ala. 452, 204 So.2d 483 (1967).

We believe that each of these five decisions is clearly distinguishable from the case at bar.

The case of Jefferson County v. Busby, supra, involved an act which provided for the appointment of bailiffs in circuit courts in counties having a population of 200,000 or more. The majority of the court held that the act was local without stating the reasons therefor other than a recitation of the cases on which they relied. We cannot presume to speculate as to why the court held as it did in that case. Suffice it to say that that case is not controlling in the case at bar.

City of Birmingham v. Moore, supra, dealt with an act which prohibited public housing projects in counties with a population of 300,000 or more. This court held that the act was local because there was no logical relation between the classification employed and the purpose to be attained. The act had the effect of leaving the construction and operation of housing projects to private enterprise, whereas in the other counties in the state, public housing authorities might carry out such functions. The court stated:

"* * * Judicial ingenuity would exhaust itself in the effort to find any rational basis for the classification it presents. Certainly the fact that the municipalities affected are in the largest county in Alabama bears no legitimate relation to the purpose of the act."

In Nelson v. State, supra, the act before the court provided for the condemnation of automobiles used in the storage of lottery papers in counties having a population of 400,000 or more. The court held that the act was local, stating that:

"* * * the legislature should be solicitous to aid in enforcing that statute [prohibiting the operation of a lottery anywhere in the state] in all parts of the State and not more so in centers of large population. The same considerations apply to such effort in all parts of the State alike so far as we can see."

For similar reasons, it was held in McDowell v. Columbia Pictures Corp., supra, that an act which provided for a board to review and license the exhibition of motion pictures prior to their being shown to persons under the age of eighteen in counties having a population of 600,000 or more was a local act. In that case, it was observed that the legislature should be solicitous in enforcing the obscenity laws in all parts of the state, especially in view of the fact that virtually the same motion pictures are shown throughout the state.

In Duncan v. Meeks, supra, an act which prohibited straight party ticket voting by electors in voting for certain offices in counties having a population of 500,000 or more was held local. The court stated:

"We are unable to see any logical relation between the classification here employed and the purpose to be attained, namely, to prevent electors in Jefferson County from voting a straight party ticket for certain nominees in general elections held in Jefferson County."

We believe that in the case at bar it is clear that the legislature could have reasonably concluded that the governing bodies of counties having over 400,000 population should have the sole and exclusive control over zoning in all areas within the county, outside the corporate limits of municipalities. The regulation of land use in populous counties within the state by the

county governing bodies appears to us to be a proper subject for the enactment of laws based upon such a minimum population standard as was set in this instance by the legislature. The problems of highly populous counties are unique with regard to the regulation of land use, especially in view of the fact that such counties generally contain a number of municipalities. Therefore, it is reasonable that the governing bodies in counties with over 400,000 population have such zoning powers, whereas other county governing bodies in the state may not.

The fact that the act before us presently affects only Jefferson County does not make the act a local law. This act will automatically apply to any other county within the state without exception upon its attaining the requisite population.

We hold that Act 1178 is a general law and as such is not in violation of Section 106 of the Alabama Constitution.

In conclusion, and by way of summary, we hold that:

I. By the enactment of Act 1178, amending both the title and Section 1 of Act 344, as previously amended, the legislature impliedly repealed the last clause of Section 4 of Act 344, as amended, which clause is directly repugnant to Section 1, as amended by Act 1178, and is impossible to reconcile with it; and, Act 344, as thus amended, is not inoperative and void because of its inharmonious provisions.

II. Act 1177 is void and inoperative in not providing a procedure for affected property owners to have notice and an opportunity to be heard in accordance with the requirements of due process of law.

III. An appearance by the attorney general in filing an answer and demurrer is a sufficient compliance with Title 7, Section 166, requiring service of process upon him.

IV. Act 1178 is a general law with local application, and no notice is required to be published as required by Section 106 of the Constitution.

The decree of the trial court is therefore affirmed in part, reversed in part and is remanded for entry of a decree in conformity herewith.

Affirmed in part, reversed in part and remanded.

MERRILL, HARWOOD, McCALL and FAULKNER, JJ., concur.

HEFLIN, C. J., and MADDOX, J., concur specially.

JONES, J., not sitting.

HEFLIN, Chief Justice (concurring specially):

I concur in the opinion of Justice Bloodworth with the exception that I disagree with his opinion that Act No. 1177 is unconstitutional. I am of the opinion that Section 4 of Act 344, as amended, should be considered in pari materia with Act No. 1177 so as to provide a due process procedure. Therefore, I am of the opinion that Act No. 1177 should not be held unconstitutional.

MADDOX, Justice (concurring specially).

I concur in the opinion in every respect except that portion which holds that Act 1177 is void and inoperative because it fails to provide in the text of the Act a procedure which would give affected property owners notice and an opportunity to be heard. As I understand the facts, after closer examination on application for rehearing, the zoning change which gave rise to the controversy here was made only after notice was published in the Birmingham Post-Herald and a public hearing was conducted in the Jefferson County Courthouse. Therefore, procedural due process was accorded the property owners in this case.

**70**

I would not strike down Act 1177 merely because the Act does not set out a procedure to be followed. Where notice and an opportunity to be heard actually has been provided, I can see no constitutional infirmity. In other words, I do not think the legislative grant of authority has to spell out in the Act the procedural requirements, although I readily admit that this is the prevalent and preferable method.

I agree also with the general proposition that if a person's property interest is affected, he must have notice and an opportunity to be heard. I do find some authority, however, for the proposition that *public hearings* and *public approval* are mandatory only when required by the Legislature.[1]

I am not willing to say that in every zoning case notice and a public hearing are mandatory although I believe it would probably be the preferable procedure. Constitutionally, owners who have an interest in *affected property* are entitled to reasonable notice and a reasonable opportunity to be heard. But the question of what property is *affected* could be an open one. While I do not necessarily think that procedural due process requirements are available only to *actual* owners, I would not attempt to specify all who would be classified as "affected property owners" under a given fact situation. In general, only persons whose rights are injuriously affected by zoning regulations may attack their validity. 101 C.J.S. Zoning § 20, p. 718.

It is interesting to note that in Sikes v. Pierce, 212 Ga. 567, 94 S.E.2d 427 (1956), and Gilgert v. Stockton Port Dist., 7 Cal.2d 384, 60 P.2d 847 (1936), which are cited in the opinion, the parties objecting to the zoning were *actual* owners. The same is true in Bell v. Studdard, 220 Ga. 756, 141 S.E.2d 536 (1965). From the reports of

these cases, I cannot tell whether there was any notice or public hearing before the ordinances were adopted, or whether those courts would have considered that of any significance. I think it is very significant that the *Jefferson County Commission* gave notice and held a hearing in this case. In short, I think Act 1177 is not unconstitutional because it contains no method of procedure. If the Jefferson County Commission, when purporting to zone under the authority granted by Act 1177, follows the method of procedure set out in Act 344, as amended by Act 1178, as it did here, such procedure would comport with due process, in my judgment.

---

1. See Cleaver v. Board of Adjustment, 414 Pa. 367, 200 A.2d 408 (1964).

In Burke v. Board of Representatives of Stamford, 148 Conn. 33, 166 A.2d 849 (1961), the Legislature did not make specific provisions for notice and hearing

by the city board in its review of an amendment to a zoning map adopted by the zoning board. The court held that it could not write such a requirement into the law by judicial fiat. See also, 101 C.J.S. Zoning § 11, p. 696.