Green Valley Partners I; Econone, Ltd.; and Jody Saiia (collectively referred to as the "landowners"), own real property located between Valley Road and U.S. Highway 280, in the City of Mountain Brook. The property is zoned for estate residences, pursuant to the City's zoning ordinance. The estate residence classification limits the use of the property to single-family residential purposes, with each lot being at least two acres.
The landowners asked the City to rezone the property for commercial use, so that they could put a gasoline service station on the property. The City denied their request. The landowners then asked the City's Board of Zoning Adjustment for a use variance to allow a gasoline station or other commercial building to be built on the land. The Board denied the request for a variance, based on Act No. 1054, Alabama Acts 1975, Reg. Session (the "Act").
The Act provides that no board of zoning adjustment of any municipality located within a county with a population in excess of 500,000 may "grant a variance under the zoning ordinance of such municipality to allow a structure or use in a district restricted against such structure or use, except as specifically provided for by the zoning ordinance of such municipality." The City of Mountain Brook is in Jefferson County, which has in excess of 500,000 people. The City's ordinances do not provide for any of the use variances that were requested by the landowners. Therefore, the Board denied the use variance.
The landowners sued the City, arguing that the population classification of the Act violated (1) the Equal Protection Clause of the Fourteenth Amendment, (2) Article IV, § 105, of the Alabama Constitution of 1901, which prohibits the enactment of a local law that addresses a subject provided for by general law, and (3) the separation of powers doctrine stated in Article III, § 43, of the Alabama Constitution. Both the City and the landowners moved for a summary judgment.[1] The trial court held the Act unconstitutional, but did not state its reasoning.
The landowners contend that the Act violates the Equal Protection Clause by treating them differently from the way it treats other similarly situated landowners. Specifically, they contend that the countywide population classification is wholly irrelevant to municipal zoning needs, i.e., that there is no rational relationship between the alleged purpose of the legislation and the classification drawn.
The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." When a statute or act is based on population, a reasonable relationship must exist between the purpose of the statute and the population classification established; otherwise, the classification will be deemed arbitrary. Peddycoart v. City of Birmingham,354 So.2d 808 (Ala. 1978).
In Peddycoart, this Court held that a population-based statute violated the Equal Protection Clause because there was no reasonable relationship between the statute and the population standard. The statute in Peddycoart granted governmental immunity to cities with populations of over 100,000. Granting a city governmental immunity based upon the city's population denied citizens the right to pursue against that city remedies for injuries to person and property resulting from the exercise of its governmental functions, while they were free to pursue those same remedies against all other cities. *Page 361 
The case at bar is easily distinguishable fromPeddycoart, because in this case there is a reasonable relationship between the Act and the population standard.
In Missouri v. Lewis, 101 U.S. 22, 11 Otto 22, 25 L.Ed. 989
(1879), a Missouri statute precluded parties in cases that arose either in the City of St. Louis or in one of the four named counties in the St. Louis area from exercising a direct appeal to the Missouri Supreme Court, except in certain enumerated situations. Citizens in counties other than those named were allowed a direct appeal to that court. The United States Supreme Court held that the statute did not violate the Equal Protection Clause.
 "The 14th Amendment does not profess to secure to all persons in the United States the benefit of the same laws and the same remedies. Great diversities in these respects may exist in two States separated only by an imaginary line. On one side of this line there might be a right of trial by jury, and on the other side no such right. Each State prescribes its own modes of judicial proceeding. If diversities of laws and judicial proceedings may exist in the several states without violating the equality clause in the 14th Amendment, there is no solid reason why there may not be such diversities in different parts of the same State. A uniformity which is not essential as regards different states cannot be essential as regards different parts of a State, provided that in each and all there is no infraction of the constitutional provision."
101 U.S. at 31.
Salsburg v. Maryland, 346 U.S. 545, 551, 74 S.Ct. 280, 283,98 L.Ed. 281 (1954), held that a Maryland statute excepting a particular county from a rule of evidence did not violate the Equal Protection Clause. The Court held that the distinctions based on county areas were not so unreasonable "as to deprive [the defendant] of the equal protection of the laws guaranteed by the Federal Constitution. The Equal Protection Clause relates to equality between persons as such rather than between areas." The Supreme Court based its holding on Missouri v.Lewis.
According to the City, the reason for the classification is that people residing in counties with a population of over 500,000 have needs with respect to zoning matters that are different from those of people living in less heavily populated areas. Their needs would involve traffic and safety concerns resulting from having numerous cities in such a county and from having many people in a small area. Jefferson County has 31 cities within its borders, including Birmingham, which is the largest city in the state; and the City of Mountain Brook is adjacent to Birmingham.
This Court has recognized that densely inhabited regions might need special laws not applicable to rural areas. InMasters v. Pruce, 290 Ala. 56, 274 So.2d 33 (1973), this Court reviewed a zoning law that gave the county governing bodies in those counties with populations in excess of 400,000 the power to provide for and regulate all land use in the unincorporated areas of such counties. The Court noted that ["t]he problems of highly populous counties are unique with regard to the regulation of land use" and stated, "Therefore, it is reasonable that the governing bodies in counties with over 400,000 population have such zoning powers, whereas other county governing bodies in the state may not." 290 Ala. at 69,274 So.2d at 45.
In Phalen v. Birmingham Racing Commission, 481 So.2d 1108
(Ala. 1985), we recognized that as the state's most populated county, Jefferson County could be treated differently from all the other counties, specifically, that Birmingham could conduct horse racing. The Court noted that the Birmingham metropolitan area had a significantly greater population than the next largest, the Mobile metropolitan area, and further noted that "the area surrounding Birmingham is the most densely populated area in the state." 481 So.2d at 1118. The Court explained that the legislature could have found that "a major horse racing facility" would require a substantial capital investment and the patronage of many people and, accordingly, this Court deferred to the legislature's decision. *Page 362 
Under the facts of this case, we hold that the population classification does not violate the Equal Protection Clause, but bears a reasonable relationship to the statutory purpose of providing cities located in heavily populated counties with a greater ability to regulate land use.
The landowners' second argument is that the Act is a local law and under § 105 of the Alabama Constitution a local law cannot be enacted that addresses a subject already provided for by general law. Section 11-52-80, Ala. Code 1975, provides for municipal zoning laws. The landowners contend that the Act is a local law addressing the same subject covered in § 11-52-80.
First, we disagree with the landowners' contention that the Act is a local law. Although it currently applies to only one county, this fact alone does make the Act a local law. InMasters, we held that a law that is based on a population classification may be enacted as a general law under limited conditions, even though the law in its application applies to only one political subdivision of the state. "In order for such a law based on a population standard which applies to only one political subdivision to be upheld as a general law, the difference in population must be substantial, the classification must be made in good faith by the legislature, and the classification must be reasonably related to the purpose sought to be achieved by the act." Masters,290 Ala. at 66, 274 So.2d at 42.
We conclude that the population standard in the Act meets theMasters test, and, therefore, that the Act is a general law. Certainly, the population difference on which the Act is based is substantial and the population standard is reasonably related to the safety concerns covered in the Act, as discussed above. We also find nothing in the record to indicate that the legislature acted other than in good faith when passing the Act.
In Peddycoart, supra, we held that a population-based statute could not qualify as a general law of local application where the legislature had enacted a statute of statewide application on the general subject of municipal immunity for torts, and where the population-based statute was clearly intended to apply to only one city. The population-based statute was an unconstitutional local law, because the population standard was not reasonably related to the purpose of the statute. In the instant case, the population standard is reasonably related to the Act.
Last, the landowners argue that the Act violates the separation of powers doctrine stated in Article III, § 43, of the Alabama Constitution; they argue that it improperly invades the "quasi-judicial" function of a board of zoning adjustment. The landowners contend that because the board of zoning adjustment is "quasi-judicial," the legislature's enactment of the Act violates the separation of powers doctrine. They argue that variances in Jefferson County will be eliminated by the Act and that landowners will bg denied their right to judicial review by direct appeal from the board of zoning adjustment to the circuit court.
The landowners correctly note that a board of adjustment is quasi-judicial in nature. The board has the power to hear appeals from the decisions of zoning officials, to hear special exceptions, and to authorize variances. § 11-52-80. However, we disagree with their argument that the Act infringes upon the board of zoning adjustment's quasi-judicial nature or the right to appeal the board's decision to the circuit court. The Act provides that a board of adjustment in a municipality in a county with a population of over 500,000 cannot grant a variance "except as specifically provided for by the zoningordinance of such municipality." If the city has a duly enacted zoning ordinance to provide for a variance, then it can be granted. The Act allows cities in heavily populated counties (only Jefferson County at this time) to have more control over variances within their limits. A heavily populated county has special concerns regarding traffic and safety, and by the Act the cities in such a county have been given the authority to grant variances accordingly.
We disagree with the landowners' contention that allowing the cities in heavily populated counties to enact ordinances concerning variances "strips corresponding judicial power *Page 363 
from the circuit courts, who will either no longer be allowed to hear any use variance appeals or [will be allowed] to entertain only certain issues on appeal." We find nothing in the Act that either on its face or as applied prevents a citizen from challenging, under § 11-52-81, the application of the city's zoning ordinances by the board of zoning adjustment.
Based on the foregoing, the judgment of the trial court is reversed and the cause is remanded.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, SHORES, and BUTTS, JJ., concur.
[1] The landowners did not raise an equal protection argument based on the Alabama Constitution.