EBSCO Industries, Inc., and The Home Insurance Company ("Home") filed an action in the Shelby Circuit Court against Luxor Corporation, Roxul Corporation, Ideal School Supply Corporation, Educational Publishing Corporation (all these defendants will hereinafter be referred to collectively as "Luxor"), and Royal Insurance Company, seeking indemnification and contribution. Royal filed a counterclaim against EBSCO and Home and a crossclaim against Luxor. Royal, Luxor, EBSCO, and Home all filed separate summary-judgment motions. The trial court denied the summary-judgment motion filed by EBSCO and Home, but it entered summary judgments for both Royal and Luxor. EBSCO and Home appeal. We reverse and remand.
On July 2, 1992, EBSCO purchased the assets of Luxor Corporation from Luxor's parent corporation, Educational Publishing Corporation ("Educational"). Before the sale, Luxor had been insured on policies held by Educational. In September 1992, Educational informed Royal of the sale and requested that Royal "endorse all policies to show this sale and adjust the premium accordingly." Royal subsequently removed Luxor's name from all of Educational's policies except its "National Liability Policy." Because of a clerical error made by Royal, Luxor's name was never removed from this policy, and Luxor remained listed on this policy as an insured entity.
On December 14, 1992, Timothy Glenn Page died when a television cart — manufactured, designed, and distributed by Luxor — fell on top of him. Page's parents filed a lawsuit against Luxor in a Texas state court to recover damages for Timothy's death. However, the summons and the complaint were sent to EBSCO. EBSCO asked Luxor to defend. Luxor wrongfully said that it had no products-liability coverage. The Pages then substituted EBSCO for Luxor as a defendant. EBSCO settled the claim made by the Pages for $450,000. Home advanced this *Page 130 
money to EBSCO. The Pages agreed to "file a notice of nonsuit regarding the lawsuit" and to release EBSCO from any further liability. EBSCO and Home filed this present lawsuit against Luxor and Royal to recover the money paid to the Pages.
This case is essentially a coverage dispute between the insurance companies — Home, which insures EBSCO; and Royal, which insures Luxor. Both sides argue that, based on the terms of the sale, they are not liable for this loss.
Luxor and EBSCO executed an agreement entitled "Asset Purchase Agreement," which set out the terms of the sale. Section 2.2 of that agreement is entitled "Liabilities Assumed"; it provides in pertinent part:
 "(a) At the closing Buyer shall not be obligated to assume, and shall not assume, any of the liabilities and obligations of Seller, whether existing as of the Closing or asserted after the Closing and relating to events that occurred before the Closing, except Buyer shall assume and agree to pay, perform and discharge the following liabilities, obligations and commitments of Seller (liquidated or unliquidated, known or unknown, actual or inchoate, accrued, contingent or otherwise), which shall be assumed by Buyer at the Closing (the `Assumed Liabilities'):
". . . .
 "(iii) all liabilities, obligations and commitments of Seller with respect to product liability and warranty claims (including the obligation to repair or replace all relevant products); provided that in the case of product liability claims, only to the extent such claims are first asserted or made after the Closing Date and only to the extent not covered by Seller's existing insurance coverage."
(Emphasis added.) EBSCO and Home contend that because Luxor was still listed as an insured on Educational's policy, they are not liable to the Pages, but that, instead, Luxor and Royal are. Royal argues that Luxor was listed as an insured after the sale only by mistake and that the contract should be reformed to say that Luxor was no longer an insured. Without a policy that covered Luxor, the Asset Purchase Agreement would then require EBSCO to be solely liable to the Pages. Luxor agrees with Royal's contentions, but it also states that even if there is an existing policy that covers Luxor, Royal will be liable up to the limits of that policy, and only EBSCO, under the Asset Purchase Agreement, will be responsible for an amount above those limits.
The questions before this Court are (1) whether Luxor was an insured under the National Liability Policy issued by Royal; (2) whether the coverage under the National Liability Policy was "existing insurance coverage" under the Asset Purchase Agreement; and (3) if there is a policy covering Luxor, can Luxor be responsible for any damage arising out of Timothy Page's death?
This Court will review a summary judgment de novo, and it will apply the same standard as the trial court. Bussey v. JohnDeere Co., 531 So.2d 860 (Ala. 1988). A summary judgment is appropriate when the evidence creates no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala.R.Civ.P.
The Asset Purchase Agreement is clear and unambiguous. It states that EBSCO will be liable for a products-liability claim (1) only if the claim is made after the closing date of the agreement, and (2) only to the extent that the claim is not covered by Luxor's insurance coverage existing at the time of the sale. Timothy Page's death occurred after the closing of the agreement; therefore, EBSCO will be liable only to the extent that Luxor's existing insurance did not cover it. As a result, we must determine whether Luxor, at the time of Timothy Page's death, had any coverage under the policies that Educational held at the time of the sale. As *Page 131 
stated above, Royal removed Luxor's name from all of the policies held by Educational, with the exception of the National Liability Policy. Therefore, Luxor could still have coverage at the time of Timothy Page's death, but only on that policy.
Royal argues that while the name of Luxor still appeared on the policy, it should not have — that because of a clerical error made by Royal, Royal failed to remove Luxor as an insured. The trial court agreed with Royal and reformed the policy so that it did not name Luxor as an insured. However, EBSCO and Home argue that this is not a situation where reformation is appropriate.
Section 8-1-2, Ala. Code 1975, allows reformation in certain situations:
 "When, through fraud, a mutual mistake of the parties or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised by a court on the application of the party aggrieved so as to express that intention, so far as it can be done without prejudice to the rights acquired by third persons in good faith and for value."
The parties make no claim of fraud, nor does any party claim that Luxor knew of the mistake by Royal. Royal claims that the mistake was mutual, but both Luxor and EBSCO contend that it was a unilateral mistake. This Court has adopted the definition of "mutual mistake" found in Restatement (Second) of Contracts § 152 (1981), which defines it as a "mutual misunderstanding concerning a basic assumption on which the contract was made." Finley v.Liberty Mut. Ins. Co., 456 So.2d 1065 (Ala. 1984); American Nat'lFire Ins. Co. v. Hughes, 624 So.2d 1362 (Ala. 1993). We find no evidence that both Luxor and Royal made a mistake. On the contrary, both Luxor and Royal appear to have agreed that Luxor would no longer be covered by this policy. Royal concedes that its own error caused Luxor to remain named as an insured on the policy. Because Royal was the only party that made the mistake, the mistake was unilateral and not mutual.
This Court dealt with a situation not materially different from the present one in American Foreign Insurance Co. v. TeeJays Manufacturing Co., 699 So.2d 1226 (Ala. 1997). In that case, we held that a unilateral mistake cannot form the basis for reformation of a contract. Id., at 1229. Both American ForeignInsurance Co. and the present case concern a unilateral mistake, and, for purposes of reformation, "[a] unilateral mistake will not suffice." Id. at 1229. Therefore, under § 8-1-2, the circuit court had no basis upon which to reform this policy, and it erred in doing so.[2]
Furthermore, § 27-23-1, Ala. Code 1975, also prohibits the reformation of this policy. That section provides:
 "No such contract of insurance shall be cancelled or annulled by any agreement between the insurer and the insured after the insured has become responsible for such loss or damage, and any such cancellation or annulment shall be void."
To reform this policy would annul the coverage after Luxor had become responsible for paying damages based on Timothy Page's death. Therefore, any reformation would violate § 27-23-1.
Next, we must determine whether the National Liability Policy was "existing coverage" at the time of the sale. The National Liability Policy was an occurrence policy[3] renewed on a yearly basis, with the policy period beginning on January 24 of each year. The sale of Luxor's *Page 132 
assets was closed on July 2, 1992. Consequently, the existing coverage under the National Liability Policy would be for the year from January 24, 1992, to January 24, 1993. Timothy Page's death occurred on December 14, 1992; therefore, the claim arising from his death would be against the coverage of the policy for the same year as the sale. The coverage provided by the National Liability Policy for the year in which the death occurred was clearly an "existing coverage" at the time of the sale.
At the time of Timothy Page's death, Luxor was covered under a policy issued by Royal; therefore, under the Asset Purchase Agreement, Luxor's insurer, Royal, is liable up to its policy limits. Furthermore, as Luxor correctly asserts, any liability above the policy limits would be the responsibility of EBSCO, not Luxor. However, the National Liability Policy has a $1 million limit. Therefore, the entire $450,000 falls within the policy limits, and Royal is responsible for the entire amount.
REVERSED AND REMANDED.
Hooper, C.J., and See, Brown, and England, JJ., concur.
[2] We decide this issue in this case based on the fact that the mistake in the policy was a unilateral mistake made by Royal. We do not reach the issue, also arising out of § 8-2-1, whether rights acquired by a third party had been prejudiced.
[3] Black's Law Dictionary 810 (7th ed. 1999) defines "occurrence policy" as: "[a]n agreement to indemnify for any loss from an event that occurs within the policy period, regardless of when the claim is made."