This case concerns the validity of a charge assessed by Escambia County to a telecommunications company that wished to install a fiber-optic cable along the public right-of-way. Because we conclude that this charge is, in reality, an unauthorized tax, we reverse the judgment of the trial court and render a judgment in favor of the telecommunications company, Lightwave Technologies, LLC.
 Facts and Procedural History
Lightwave Technologies, LLC ("Lightwave"), is a telecommunications company authorized by the Alabama Public Service Commission ("APSC") to provide interexchange-telecommunications service in Alabama pursuant to a "certificate of public convenience and necessity" ("CPCN"). Pursuant to the CPCN, Lightwave has been constructing a fiber-optic network in Alabama that will help to provide rural consumers with advanced telecommunications services.
In July 1997, Lightwave contacted Escambia County officials regarding the procedure it needed to undertake in order to install approximately 17 miles of fiber-optic cable along the County's highway right-of-way. The County required Lightwave to provide a "right-of-way restoration bond," pursuant to a comprehensive "Utility Agreement," in the amount of 10% of the total cost of the project, to guarantee that the right-of-way would be restored to its original condition. Additionally, the County advised Lightwave that it, like all for-profit companies, had to pay a $1.00 per-linear-foot "fee" for each foot of a right-of-way it used.
Lightwave was the first telecommunications or utility provider to be assessed this charge. Thinking it unfair that the County's right-of-way could be used at no cost, while private landowners were receiving *Page 178 
large amounts of money for the use of their private rights-of-way, the County's commissioners imposed the charge in order to obtain compensation for the use of the County's right-of-way. The charge was designated as a "fee." It was designed to generate revenue for the County, and all money generated from it was to be deposited into an account used to maintain roads and bridges throughout the county.
In May 1998, Lightwave sued Escambia County in the United States District Court for the Southern District of Alabama, seeking a declaration that the imposition of the charge violated certain provisions of the Telecommunications Act of 1996 ("Telecom Act"). The federal court determined that the charge was a tax and that, under the Tax Injunction Act,[1] the federal court lacked subject-matter jurisdiction to decide the case. Accordingly, the federal court dismissed the action. SeeLightwave Techs., L.L.C. v. Escambia County, 43 F. Supp.2d 1311
(S.D.Ala. 1999).
Lightwave then sued in the Escambia Circuit Court, seeking a declaration that the charge violated Alabama law, the United States Constitution, the Alabama Constitution, and the Telecom Act. After the County had answered Lightwave's complaint, Lightwave filed a motion for a partial summary judgment and filed a brief in support thereof, arguing that it was entitled to a judgment, on the basis that the imposition of the charge denied Lightwave due process of law and was otherwise unauthorized and invalid under Alabama law. The County filed a cross-motion for summary judgment, asserting that the charge was not prohibited by Alabama law and that it did not violate the Telecom Act. After considering the pleadings, the briefs, and the arguments of counsel, the trial court denied Lightwave's motion for a partial summary judgment and granted the County's cross-motion for summary judgment. Lightwave appeals from that judgment.
 Analysis
Because Lightwave appeals from a summary judgment, our review is de novo. EBSCO Indus., Inc. v. Royal Ins. Co. of America, 775 So.2d 128
(Ala. 2000). "`[W]e utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988), and whether the movant was `entitled to a judgment as a matter of law.' Wright v. Wright, 654 So.2d 542 (Ala. 1995)." Hobson v. AmericanCast Iron Pipe Co., 690 So.2d 341, 344 (Ala. 1997). Once a party moving for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Bass v. SouthTrustBank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assur.Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw. Jefferson County Comm'n v. ECO Preservation Servs.,L.L.C., 788 So.2d 121 (Ala. 2000) (citing Renfro v. Georgia Power Co.,604 So.2d 408 (Ala. 1992)). *Page 179 
Lightwave first contends that the County lacks the statutory authority to impose the $1.00 per-linear-foot charge for the use of its rights-of-way. The County's authority to regulate its public rights-of-way is outlined in § 23-1-85, Ala. Code 1975, which states:
 "The right-of-way is granted to any person or corporation having the right to construct electric transmission, telegraph or telephone lines within this state to construct them along the margin of the right-of-way of public highways, subject to the removal or change by the county commission of the county, except in cases where the State Department of Transportation has jurisdiction over such highway."
Although this Court has not recently interpreted this statute, it has interpreted its predecessors. In doing so, the Court has stated:
 "The right and authority to erect and maintain such transmission line[s] along public highways was not made to depend upon the discretion or consent of the court of county commissioners or like bodies. The only authority conferred on such public bodies was to so regulate such use as that the right of the public to use such roads would not be unreasonably or unnecessarily interfered with."
City of Prichard v. Alabama Power Co., 234 Ala. 339, 342, 175 So. 294,295 (1937).
The County argues that its authority to impose the charge derives from § 23-1-80, Ala. Code 1975, which gives the County the right of general superintendence of the public roads and bridges within its boundaries. However, that same statute also provides that the County's legislative and executive powers with regard to that general superintendence may be limited by other statutes within the same chapter of Title 23.[2] Because § 23-1-85 (a Code provision appearing in the same chapter) specifically addresses the use of the County's rights-of-way, its language acts to limit the County's authority. In view of our holding in City of Prichard v. Alabama Power Co.,234 Ala. at 342, 175 So. at 295, we conclude that the County's authority extends only so far as to allow it to regulate the use of the rights-of-way so that the use of the roads will not be unreasonably or unnecessarily interfered with.
Before the County imposed the $1-per-linear-foot charge, the County had exercised its statutory authority to regulate the use of the public rights-of-way by requiring Lightwave to post a "right-of-way restoration bond." This bond ensured that the County would have funds available to return the property to its original condition in case Lightwave failed to comply with the terms of the Utility Agreement.[3] *Page 180 
The evidence before this Court indicates that the purpose behind the imposition of the per-linear-foot charge was not to "regulate" the use of the County's rights-of-way; rather, the charge was not a "fee," but was in reality an impermissible tax. First, the charge was designed to generate revenue for the County; this fact was established by the deposition testimony of two County Commissioners, who stated that they voted to impose and collect the charge because they felt the County was entitled to receive compensation for allowing Lightwave to use the public rights-of-way. Second, the amount of the fee is not rationally related to the expected cost of repairing the rights-of-way after the fiber-optic cable has been installed. We agree with the federal court that the "lack of correlation between the expected cost to the county and the magnitude of the fee militates in favor of a finding that the right-of-way fee is a revenue-raising `tax under State law.'" Lightwave Techs., L.L.C. v.Escambia County, supra, 43 F. Supp.2d at 1314. Third, the moneys received through the imposition of the charge were deposited into the County's Gasoline Tax Fund. This fund held tax moneys collected for maintenance of the County's roads and bridges — not for maintenance of the County's rights-of-way.
Under Alabama law it is well settled that "the power to tax does not inhere in county governmental bodies" and that "[c]onsequently, authority for the imposition of county taxes must proceed from an express legislative grant." Ex parte Coffee County Comm'n, 583 So.2d 985, 986
(Ala. 1991) (citations omitted). Because the Legislature had made no such grant, the County had no authority to impose the tax.
Lightwave also argues that the per-foot "fee" violated the Telecom Act. Because we hold that the "fee" was in fact an impermissible tax, we need not address that argument.
We reverse the judgment of the trial court and render a judgment in favor of Lightwave.
REVERSED AND JUDGMENT RENDERED.
MOORE, C.J., and HOUSTON, SEE, LYONS, HARWOOD, WOODALL, and STUART, JJ., concur.
[1] The Tax Injunction Act of 1937 provides: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341
[2] Section 23-1-80 states:
 "The county commissions of the several counties of this state have general superintendence of the public roads, bridges and ferries within their respective counties so as to render travel over the same as safe and convenient as practicable. To this end, they have legislative and executive powers, except as limited in this chapter. They may establish, promulgate and enforce rules and regulations, make and enter into such contracts as may be necessary or as may be deemed necessary or advisable by such commissions to build, construct, make, improve and maintain a good system of public roads, bridges and ferries in their respective counties, and regulate the use thereof; but no contract for the construction or repair of any public roads, bridge or bridges shall be made where the payment of the contract price for such work shall extend over a period of more than 20 years."
(Emphasis added).
[3] Among other things, the Utility Agreement required Lightwave to restore sewers, drains, pavement, driveways, or other structures to their original condition after it completed its project. It also required Lightwave to bear the cost of any damage or interruption to other utility services, and it made Lightwave solely responsible for the costs associated with relocating its lines if the highway or road needed to be expanded or relocated.