813 So.2d 844 (2001)
Ray DENSMORE et al.
v.
JEFFERSON COUNTY et al.
1000264.
Supreme Court of Alabama.
September 21, 2001.
*845 Barry A. Ragsdale of Ivey & Ragsdale, Birmingham, for appellants.
Jeffrey M. Sewell, county atty., Birmingham, for Jefferson County and Charles H. Crim.
Helen Currie Foster of Graves, Dougherty, Hearon & Moody, Austin, Texas; and Emily Sides Bonds and Alan M. Warfield of Walston, Wells, Anderson & Bains, L.L.P., Birmingham, for Storm Water Management Authority, Inc.
MADDOX, Retired Justice.
This appeal is from a summary judgment entered in favor of the defendants. It involves the constitutionality of an act of the Legislature relating to the discharge of storm waters in Jefferson County and municipalities located therein or partially therein.
The specific legal issues presented are (1) whether Act No. 95-775, Ala. Acts 1995, codified at § 11-89C-1 et seq., Ala. *846 Code 1975 ("the Storm Water Act"), is a local act that was not properly advertised, (2) whether the codification of the Act into the Code by the Legislature had the effect of making it a general act, and (3) whether the storm-water fees authorized by Jefferson County Ordinance No. 97-1532, adopted pursuant to the provisions of the Act, amount to an unconstitutional levy.
After carefully reviewing the law relating to the effect codification of a statute has on the classification of a law as being "general" or "local," we conclude that the trial court properly entered the summary judgment in favor of the defendants as to this issue. Furthermore, after reviewing the methodology used to implement the Act, as shown by the record before us, we conclude that the summary judgment was proper as to this issue also. Consequently, we affirm.

I.
The Storm Water Act was adopted by the Legislature in 1995. In the preamble to the Act, the Legislature stated, in pertinent part:
"(a) The Legislature finds and declares that it is in the public interest and the health, safety, and welfare of the citizens of this state and within the police power of the state, county, and municipal governments to promote effective and efficient compliance with federal and state laws, rules, regulations, and municipal permits relating to storm water discharges into municipal separate storm sewers, and to promote and authorize the discovery, control, and elimination, wherever practicable, of that discharge at the local government level.
"(b) It is the intention of the Legislature by passage of this chapter to assist the state in its implementation of the storm water laws, and to supplement the authority of the governing bodies of all counties and municipalities in the state to enable them to implement the storm water laws.
"(c) It is further the intention of the Legislature to authorize and promote the intercooperation of the governing bodies in implementing the storm water laws and the purposes of this chapter.
"(d) It is further the intention of the Legislature to authorize governing bodies to determine the methods and procedures they shall use to carry out the storm water laws and this chapter, to make their respective participation in a public corporation intercooperation program optional, and to adopt policies and procedures pertaining to their responsibilities in the program and the procedure for entry into and exit from the program. It is the intention of the Legislature to grant the governing bodies, whether in the program or acting individually, the enforcement authority needed in order to satisfy the requirements of storm water laws, further, to act by resolution or ordinance enforceable in their respective municipal courts or the district courts and by civil procedures in district and circuit courts, including fines, penalties, damages, and injunction as authorized and appropriate. It is the intention of the Legislature to grant governing bodies the authority to determine their financial needs to fund the administration, operations, and projects of the program, their individual needs, and the methods to generate and collect the necessary revenue and to authorize the use of the assessment, billing, and collection capabilities and authority of the respective county tax assessors and tax collectors for that purpose."
§ 11-89C-1, Ala.Code 1975.
Section 11-89C-2 defined, in pertinent part, the term "governing body":

*847 "(1) Governing body. The governing bodies of all Class 1 municipalities within the state and the county governing bodies in which the Class 1 municipalities are located and the governing bodies of all municipalities located within those counties, and where any such municipality is also located partially within an adjoining county, then the governing body of such adjoining county, and which governing bodies are specifically designated in 40 C.F.R. Part 122, Appendices F, G, H, or I or by ADEM pursuant to the authority delegated to it under the Clean Water Act, 33 U.S.C. Section 1251 et seq., as of August 8, 1995."
It seems apparent from a reading of this section of the Storm Water Act that the Act would apply in Jefferson County at the time of its enactment. The parties stipulated that the legislation was not advertised as the Constitution of 1901 would require for local legislation.
In March 1997, acting pursuant to the provisions of the Storm Water Act, Jefferson County, along with 23 municipalities located within Jefferson County or partially therein, formed the Storm Water Management Authority, Inc., and, as authorized by the Storm Water Act, the Jefferson County Commission approved Ordinance No. 97-783, in July 1997, entitled: "An Ordinance to levy storm water management program fees on parcels of property located within the unincorporated limits of Jefferson County." The Ordinance provided, in part:
"1. Under the authority of Act 95-775, the County Commission hereby levies upon each parcel of real property or portion thereof located within the unincorporated limits of Jefferson County a fee to be determined as follows for the purpose of funding the storm water management program, including the Storm Water Management Authority, Inc. and to comply with the requirements of NPDES Permit ALS000001 held by the County jointly with other municipalities in Jefferson County.
"2. Alternatively, pursuant to the police power of the Jefferson County Commission, the County Commission hereby levies upon each parcel of real property or portion thereof located within the unincorporated limits of Jefferson County a fee to be determined as follows for the purpose of funding the storm water management program, including the Storm Water Management Authority, Inc. and to comply with the requirements of NPDES Permit ALS000001 held by the county jointly with other municipalities in Jefferson County:
"A. The fee is levied on properties designated by the Jefferson County Tax Assessor pursuant to Amendment 325 to the Constitution of Alabama, 1901, and § 40-8-1, Code of Alabama, 1975, as Class I and class II land use classification in the amount of $15 per parcel or portion thereof located in the unincorporated limits of Jefferson County.
"B. The fee is levied on the properties designated by the Jefferson County Tax Assessor pursuant to Amendment 325 to the Constitution of Alabama, 1901, and § 40-8-1, Code of Alabama, 1975, as Class III land use classification in the amount of $5 per parcel or portion thereof located in the unincorporated limits of Jefferson County."
The original plaintiffs, Phillip Ford and Shannon Ford, filed this class action on March 2, 1998, challenging the constitutionality of the Storm Water Act and the storm-water fee imposed by the county *848 ordinance.[1] They named as defendants the Jefferson County Commission, the Storm Water Management Authority, and the tax assessor of Jefferson County.
The plaintiffs amended the complaint to add Ray Densmore and Brenda Densmore, the appellants here, as plaintiffs and the 23 municipalities in Jefferson County as defendants; the plaintiffs subsequently moved to dismiss the original plaintiffs, and they were dismissed.
The defendants timely answered the complaint and filed a counterclaim for a declaratory judgment; they subsequently filed a motion to dismiss or, in the alternative, a motion for summary judgment. The motion was accompanied by supporting affidavits and other documents. After receiving briefs from the parties and hearing oral argument from both sides, the trial court granted the defendants' motion for summary judgment, holding that the Storm Water Act had been properly enacted as a general law and that any constitutional infirmities in the Storm Water Act had been cured when the Act was codified into the Code of Alabama and carried into the Cumulative Supplement to the Code. The plaintiffs appealed. The two arguments that both sides address are whether the Storm Water Act was a local act that was not properly adopted by the Legislature and whether the fees imposed on property owners were valid and enforceable.

II.
We first state the scope of our review, which was recently stated in Watkins v. Board of Managers of the City of Birmingham Retirement & Relief System and Firemen's & Policemen's Supplemental Pension System, 802 So.2d 190 (Ala. 2001): when reviewing a ruling on a motion for a summary judgment, this Court applies the same standard the trial court used in determining whether the evidence before the court made out a genuine issue of material fact. When a party moving for a summary judgment makes a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).

III.
We first consider the summary judgment as it relates to the plaintiffs' claim that the Storm Water Act is a local law and not a general law. The plaintiffs argue that the Legislature, in adopting the act, failed to comply with Art. IV, § 106, Const. of Ala.1901, as amended by Amendment No. 341.[2]
*849 The first question we must answer, therefore, is whether the Storm Water Act is a local law or a general law. Amendment 397 of the Alabama Constitution of 1901 defines "general law" and "local law" as follows:
"A general law is a law which in its terms and effect applies either to the whole state, or to one or more municipalities of the state less than the whole in a class. A general law applicable to such a class of municipalities shall define the class on the basis of criteria reasonably related to the purpose of the law, provided that the legislature may also enact and change from time to time a general schedule of not more than eight classes of municipalities based on population according to any designated federal decennial census, and general laws for any purpose may thereafter be enacted for any such class. Any law heretofore enacted which complies with the provisions of this section shall be considered a general law.
"No general law which at the time of its enactment applies to only one municipality of the state shall be enacted, unless notice of the intention to apply therefor shall have been given and shown as provided in Section 106 of this Constitution for special, private or local laws; provided, that such notice shall not be deemed to constitute such law a local law.
"A special or private law is one which applies to an individual, association or corporation. A local law is a law which is not a general law or a special or private law."
We begin our review by noting that this Court has held that when a dispute arises over whether a law is local or is general in nature, a court is obligated, when possible, to read the law as a general one. Norton v. Mobile County, 562 So.2d 503 (Ala.1990). It is quite clear, as previously stated, that the Storm Water Act defines "governing body" in such a manner that, at the time of its passage, the Act applied to Jefferson County and to municipalities located therein or partly therein.
In determining whether an act is a general act or a local act, a court considers the principle that "`[i]n order for ... a law based on a population standard which applies to only one political subdivision to be upheld as a general law, the difference in population must be substantial, the classification must be made in good faith by the legislature, and the classification must be reasonably related to the purpose sought to be achieved by the act." City of Mountain Brook v. Green Valley Partners I, 690 So.2d 359, 362 (Ala.1997) (quoting Masters v. Pruce, 290 Ala. 56, 66, 274 So.2d 33, 42 (1973)). We consider that principle applicable to the Storm Water Act we are considering in this case, because this Court has stated:
"In addressing the alleged constitutional infirmities of a statute, we are conscious of the well-established rule requiring courts to defer to the policymaking authority of the Legislature, by rejecting constitutional challenges to *850 statutes, where it is possible to do so. In Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 9-10, 18 So.2d 810, 814-15 (1944), cert. dismissed, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945), this Court stated:
"`Uniformly, the courts recognize that [the] power [to strike down a statute as unconstitutional] is a delicate one, and to be used with great caution.... It follows that, in passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law.
"`Another principle which is recognized with practical unanimity, and leading to the same end, is that the courts do not hold statutes invalid because they think there are elements therein which are violative of natural justice or in conflict with the court's notions of natural, social, or political rights of the citizen, not guaranteed by the constitution itself. Nor even if the courts think the act is harsh or in some degree unfair, and presents chances of abuse, or is of doubtful propriety. All of these questions of propriety, wisdom, necessity, utility, and expediency are held exclusively for the legislative bodies, and are matters with which the courts have no concern. This principle is embraced within the simple statement that the only question for the court to decide is one of power, not of expediency or wisdom.'
"(Citations omitted.)"
City of Orange Beach v. Duggan, 788 So.2d 146, 150-51 (Ala.2000).
Based on the authorities quoted here, we agree with the defendants that the Legislature fully complied with the Constitution of 1901 in adopting the Storm Water Act as a general law. But, assuming, arguendo, that § 106, as amended, applied to the Storm Water Act, and that the Act was not advertised as required by § 106, would that invalidate the Storm Water Act? The trial court did not address the issue whether the Storm Water Act was a general law or a local law, but instead held that any constitutional infirmities in the adoption of the Act would have been cured by its codification as part of the Code of Alabama. We agree with the trial court's holding on that issue. This Court has stated that "[a]ll infirmities of legislative procedure in enacting an original act are cured when that act is incorporated into a code and the code adopted by the legislature." Fuller v. Associates Commercial Corp., 389 So.2d 506, 509 (Ala.1980). See, also, State v. Golden, 531 So.2d 941 (Ala.Crim.App.1988), which cites and quotes Fuller.
In Opinion of the Justices No. 81, 249 Ala. 511, 31 So.2d 721 (1947), this Court rejected a challenge to the constitutionality of a bill imposing a one-cent gasoline tax in counties with a population of over 400,000. This Court took judicial notice that only Jefferson County met the population classification, but held that the bill was nonetheless a general law. Responding to an inquiry by the Senate, the Justices opined:
"Finally, responding to Section 5 of your inquiry, we note that the mentioned Code sections (§§ 865 et seq., Title 51, Code 1940) with reference to the Commissioner of Licenses of Jefferson County cannot be classified as a *851 local statute. The statute was passed originally as a general law (General Acts 1931, pages 522 et seq.; State ex rel. Ward v. Henry, 224 Ala. 224, 139 So. 278[17]) and was carried as a general law in the codification of 1940."
249 Ala. at 515, 31 So.2d at 724-25.
The principle that all infirmities of legislative procedure in enacting an original act are cured when that act is incorporated into a code was explained in Fuller v. Associates Commercial Corp., supra. That case involved a constitutional challenge based on a purported violation of § 45 of the Constitution of 1901, which requires that each act contain but one subject. In that case, this Court stated:
"All infirmities of legislative procedure in enacting an original act are cured when that act is incorporated into a code adopted by the legislature. Bluthenthal v. I. Trager and Company, 131 Ala. 639, 31 So. 622 (1901); Bales v. State, 63 Ala. 30 (1879)."
389 So.2d at 509. The plaintiffs are aware of this general principle of law, but they argue that the codification of the Storm Water Act in the Cumulative Supplement of the Code did not have the effect of making the act a general law. They rely on Ex parte Coker, 575 So.2d 43 (Ala.1990), in support of their argument that the codification of the Storm Water Act in the Cumulative Supplement of the Code of Alabama 1975 did not have the effect of making the act a general law. We believe the arguments of the plaintiffs are inapposite.
This Court, in Ex parte State Department of Revenue, 683 So.2d 980, 982 (Ala. 1996), discussed the decision of Ex parte Coker on the principle of law we are now discussingthe effect of codification of a prior act:
"This Court has held that, by the process of adopting the entire Code, the legislature repeals any portion of the original legislation and prior codification not present in that adoption. See Ex parte Coker, 575 So.2d 43 (Ala.1990). In other words, the adoption of the entire Code supersedes the original enactments and any prior codification. After this Court decided Coker, the legislature refined the codification process and began the current practice of annually codifying legislation. Under this new procedure, the Code commissioner continually reviews the manuscript of the Code and directs the Code publisher to publish replacement volumes and an annual supplement that incorporates into the Code the most recent acts of a general and permanent nature. Once the annual supplement and the replacement volumes are published, they are reviewed by the Code commissioner, who prepares an annual codification bill to adopt the replacement volumes and annual supplement. This Court, however, has not considered the question whether this process has the same effect as a codification of the entire Code for the purpose of resolving conflicts between the Code and the original act. In other words, we have not determined if these cumulative supplements also supersede the original enactment."
Although this Court found it unnecessary to discuss the annual codification process in Ex parte State Department of Revenue, the Court did note that the annual codification process was begun after this Court had decided Coker.
In Swift v. Gregory, 786 So.2d 1097 (Ala. 2000), this Court did consider the effect of codification on the validity of an act. In that case, Barbara Swift had served as the register of the Calhoun Circuit Court from February 23, 1975, until September 30, 1996. During her tenure, she elected to participate in the supernumerary program *852 (§ 12-17-140 et seq., Ala.Code 1975). In 1996, Swift filed a declaration of intention to assume supernumerary status because of a permanent disability. Swift furnished certifications from three physicians stating that she was permanently disabled and incapable of carrying out the duties of her position. The director of the Administrative Office of Courts, Frank Gregory, denied Swift's request for supernumerary status, because she was not yet 55 years old. He contended that § 12-17-140 required that a clerk or register be at least age 55 to assume supernumerary status. Swift sued the director in the Montgomery Circuit Court, asking the court to hold that § 12-17-140 permitted her to be named as a supernumerary register, on the ground of her permanent disability, and thus entitled to be paid her annual salary, even though she had not reached the age of 55. The parties agreed to submit the matter on the pleadings and the briefs, and the trial court entered a judgment in favor of the director. On appeal, Swift argued that the Legislature, in the original Act, had intended for the age restriction to apply only to subsection (5) of the act, dealing with retirement after 18 years of service, because, she said, it was illogical to deny supernumerary status on the basis of the age restriction when an applicant is determined to be disabledan involuntary status. She contended that the codification of the Act resulted in an omission that the Legislature did not intend, an omission that left a disabled clerk or register with nothing until he or she reached the age of 55. This Court stated:
"We cannot agree with Swift's contention that the Legislature did not intend for the changes made from the provisions of the original Act in § 7-112 to the codified statute (§ 12-17-140) to be effective. Once the Code Commission modifies an act and the Legislature thereafter adopts a Code containing the modification, the modification has the force of law.
"`It is the settled law of this state that the Code of Alabama ... is not a mere compilation of the laws previously existing, but is a body of laws, duly enacted, so that laws, which previously existed, ceased to be law when omitted from [the] Code, and additions, which appear therein, become the law from the approval of the Act adopting the Code.'
"State v. Towery, 143 Ala. 48, 49, 39 So. 309, 309 (1905)."
We do not believe, in view of what this Court said in Swift and Ex parte Department of Revenue, that Ex parte Coker is determinative on the effect of annual codification of previously adopted legislation; therefore, we cannot accept that what this Court said in Ex parte Coker is controlling, insofar as the facts of this case are concerned, facts that are substantially different from those in Ex parte Coker. In that case the Court held that the codification principle could not be applied to resurrect an act that had never actually become law because it was pocket-vetoed by the Governor.
Based on the foregoing, and even assuming, arguendo, that the Storm Water Act was a local act when adopted, we hold that the trial court did not err in holding that it was unnecessary to determine whether the Storm Water Act was a general law or a local law, because any infirmities in the adoption of the Act were cured by its codification as part of the Code of Alabama 1975.

IV.
Did the trial court err in determining that the methodology used by Jefferson County in assessing the program fees was valid?
*853 The Densmores argued to the trial court, and they argue here on appeal, that the storm-water fee is an illegal, unconstitutional tax because, they say, the primary purpose of the fee is to raise revenue and there is no relationship between the amount of the storm-water fee and the benefit each property owner receives from the Storm Water Management Authority.
Is the storm-water fee a tax or a fee? This Court in Opinion of the Justices No. 363, 694 So.2d 1307, 1309 (Ala.1997), stated:
"The Court in State v. Commercial Loan Co., 251 Ala. 672, 38 So.2d 571 (1948), addressed the distinction between taxes that are purely revenue measures and `taxes' or licenses, fees, or charges that are principally regulatory in purpose and effect. The Court distinguished between a `true' tax, which is a revenue measure, and a license, which requires the payment of a fee or charge as part of a regulatory measure imposed pursuant to the police power of the state. The Court noted that license fees are often informally referred to as taxes:
"`The word tax, unless expressly defined, is inclusive of both levies for revenue purposes and levies for regulatory purposes. In other words license fees are commonly called taxes even though strictly speaking they may be a charge or fee rather than a tax.'"
"251 Ala. at 675, 38 So.2d at 573-74."
The Densmores argue, citing no authority, that the primary purpose of the stormwater-program fee is to raise revenue. Furthermore, they maintain the fee lacks any regulatory component. Jefferson County argues, in opposition, that the federal Clean Water Act imposed phased-in requirements on Jefferson County to control storm water and that all of the stormwater fees collected have been used exclusively to fund the storm-water program mandated by state and federal law. In addition, the County argues, the Storm Water Ordinance provides that Jefferson County levies a fee, under the Storm Water Act, and, alternatively, under its police power, "for the purpose of funding the storm water management program, including the Storm Water Management Authority, Inc. and to comply with the requirements of NPDES Permit ALS000001." The County also argues that the Act, which the Storm Water Ordinance references, authorizes the assessment of fees "to implement this chapter or to comply with all provisions of storm water laws." § 11-89C-9(d), Ala.Code 1975.
In reviewing the record before us, we note that Teresa Lucas, a licensed professional engineer, testified that the Environmental Protection Agency ("EPA") required the Storm Water Authority, as an NPDES permit holder, to demonstrate that it had a stable funding source, to make sure that the storm-water program would operate without interruption.
The evidence, even when viewed in a light most favorable to the Densmores, shows that the Storm Water Authority adopted the storm-water fee as a result of federal and state mandates that it comply with the Clean Water Act and the NPDES permits.
The Densmores also argue the storm-water fee is a tax because, they say, there is no relationship between the amount of the storm-water fee imposed on a parcel of property and the amount of benefit the property owner receives. In contrast, Jefferson County maintains that Alabama law does not require that fees precisely comport with the benefits provided to property owners. We agree with the County's argument.
*854 This Court, in Board of Water & Sewer Commissioners of the City of Mobile v. Yarbrough, 662 So.2d 251 (Ala.1995), upheld the rationale that, for a fee to be sustained as valid, the benefit conferred on property owners need not relate directly to the exact amount paid. The Court said that a "substantial indirect benefit" to a property owner would suffice to uphold the validity of a fee. 662 So.2d at 255. In Yarbrough, the Board was created to operate Mobile's water and sewer systems and to address such problems as the fact that "raw sewage was being emptied into Mobile Bay and other public waterways." Id. at 252. The plaintiff, whose property was not connected to the sewer system, sued the Board when it began charging residents who were not connected to its sewer system a flat monthly fee purportedly relating to sewer service. Formerly, the Board had charged a combined fee for water and sewer services to all residents, whether they used the sewer service or not. This Court upheld the Board's prior fee structure and held that a municipal utility is authorized to set fees so as to create a surplus. The Court also held that any surplus resulting from the operation of the water service could lawfully be used for the sewer service, which, this Court found benefitted all residents, "regardless of whether the customer received sewer service." Id. at 253. This Court also upheld the new fee structure, which charged a separate sewer-related fee to residents who lacked sewer service, concluding that every member of the community received a "substantial indirect benefit" from the sewer service, regardless of whether the resident was connected to the system. This Court agreed with the Board's statement in a 1954 resolution that "[t]he citizens of the City of Mobile ... are directly or indirectly affected by the results of the pollution of [public] waters and the beneficial results to be obtained by the elimination of the pollution will be a public benefit to the entire community and citizens thereof." 662 So.2d at 254.
Applying the principles of statutory construction applicable when the constitutionality of legislative action is challenged, and based on previous decisions of this Court, we conclude that the trial court did not err in determining that the storm-water-program fee is a valid fee for the purpose of regulating storm-water discharge and that it is not a tax designed to raise revenue.
In reaching this result, we have considered the recent holding of this Court in Lightwave Technologies, LLC v. Escambia County, 804 So.2d 176 (Ala.2001), in which this Court determined that a charge assessed by Escambia County on Lightwave Technologies, LLC ("Lightwave"), was a "tax" instead of a "fee" and was invalid. In that case, Lightwave contended that the County lacked the statutory authority to impose a $1.00-per-linear-foot charge for the use of its rights-of-way, as set out in § 23-1-85, Ala.Code 1975. The Court, after determining that the assessed charge was a "tax" instead of a "fee," agreed with Lightwave's argument. The Court held:
"Under Alabama law it is well settled that `the power to tax does not inhere in county governmental bodies' and that `[c]onsequently, authority for the imposition of county taxes must proceed from an express legislative grant.' Ex parte Coffee County Comm'n, 583 So.2d 985, 986 (Ala.1991) (citations omitted). Because the Legislature had made no such grant, the County had no authority to impose the tax."
804 So.2d at 180. We have determined that the Storm Water Act was validly enacted by the Legislature, and we have also determined that the primary purpose of the assessment was not for the purpose of raising revenue; consequently, we conclude *855 that this case is distinguishable from Lightwave Technologies.
We conclude that the trial court did not err in holding that the Storm Water Act was a general law; that the storm-water fee is valid; and that Jefferson County is not required to demonstrate a direct benefit to each person assessed the storm-water fee, because, as this Court held in Yarbrough, a valid fee may be sustained based upon the indirect benefit or a public benefit to the persons assessed the fee. The judgment of the trial court is due to be affirmed.
In affirming the judgment of the trial court we note that the Chief Justice, in his dissenting opinion, disagrees with the conclusion that we reach on the issues that the parties presented to us on appeal, but he also notes "an issue in this case that the parties have not raised," but one that he states "should be dispositive"that Birmingham was not a Class 1 municipality at the time the Storm Water Management Act was adopted in 1995. As the Chief Justice notes, this issue was not raised or addressed by the parties, and this Court has held on more than one occasion that it "will not reverse the trial court's judgment on a ground raised for the first time on appeal." Smith v. Equifax Services, Inc. 537 So.2d 463, 465 (Ala. 1988), citing Costarides v. Miller, 374 So.2d 1335 (Ala.1979).
Although we elect not to address the issue the Chief Justice raises relating to Class 1 municipalities that the parties did not argue on appeal, our refusal to address that issue should not be construed to mean that we agree with the views expressed in the dissenting opinion. See, Ala.Code 1975, § 11-40-12(a), which provides, in part, that "[t]here are hereby established eight classes of municipalities based on the population as certified by the 1970 federal decennial census, as authorized by amendment No. 375, Constitution Of Alabama, 1901...." (Emphasis added.)
This opinion was prepared by Retired Justice Hugh Maddox, sitting as a Justice of this Court pursuant to § 12-18-10(e), Ala.Code 1975.
AFFIRMED.
HOUSTON, LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
MOORE, C.J., and JOHNSTONE, J., dissent.
SEE, J., recuses himself.
MOORE, Chief Justice (dissenting).
Article IV, § 110, of the Alabama Constitution of 1901, as modified by Amendment No. 397, provides:
"A general law is a law which in its terms and effect applies either to the whole state, or to one or more municipalities of the state less than the whole in a class. A general law applicable to such a class of municipalities shall define the class on the basis of criteria reasonably related to the purpose of the law...."
Article IV, § 106, of the Constitution, as modified by Amendment No. 341, provides:
"No ... local law shall be passed on any subject ... unless notice of the intention to apply therefor shall have been published, ... in the county or counties where the matter or thing to be affected may be situated, which notice shall state the substance of the proposed law ...; and proof that said notice has been given shall be exhibited to each house of the legislature.... The courts shall pronounce void every ... local law which the journals do not affirmatively show *856 was passed in accordance with the provisions of this section."
(Emphasis added.)
The appellants claim that Act No. 95-775, Ala. Acts 1995 (the Storm Water Act), which applies only to Jefferson County, is a local law. No notice of this law was published. The appellants consequently contend that Act No. 95-775, as well as Ordinance 97-783 (which levied a "fee" to pay for implementation of the Storm Water Act), violates Amendment 341 of the Alabama Constitution.
The trial court entered a summary judgment for Jefferson County, apparently on the basis of Jefferson County's argument that the subsequent codification of Act No. 95-775 had cured any infirmity resulting from the lack of notice. The main opinion predicates its affirmance on this same argument.
I dissent, because Act No. 95-775, the Storm Water Act, was a local law, and Jefferson County has conceded that the proposed Act was not advertisedthis fact shows an explicit violation of Amendment 341and also because the codification of Act No. 95-775 into § 11-89C-1 et seq., Ala.Code 1975, could not cure the constitutional defect embedded in the Act. For each of these reasons, I conclude that Act No. 95-775 was constitutionally invalid and was void ab initio.
The main opinion conflicts with this Court's precedent in both areas. First, it labels Act No. 95-775 as a general act. The following statement is traditionally attributed to Abraham Lincoln: "If you call a tail a leg, how many legs has a dog? Five? No, calling a tail a leg don't make it a leg." John Bartlett, Familiar Quotations, p. 542 (13th ed.1955). Likewise, Act No. 95-775 is clearly and unambiguously a local act, and calling it a "general act" does not make it one.
In Jefferson County Board of Health v. City of Bessemer, 293 Ala. 237, 241, 301 So.2d 551, 554 (1974), this Court held:
"A statute is presumed to be valid and the party challenging its constitutionality has the burden of establishing such invalidity."
See also Jefferson County v. Busby, 226 Ala. 293, 295, 148 So. 411, 413 (1933).
However, more than 81 years ago, in a case in which a plaintiff challenged an act as being a local act rather than a general act, this Court stated:
"If the profession and members of the lawmaking body have been impressed from the previous decisions of this court that legislation may be had for any particular locality by the mere fixing, arbitrarily, of a population classification without a compliance with section 106 of the Constitution, they have misconceived the true meaning and effect of those decisions.
"In [State ex rel. Crenshaw v. Joseph, 175 Ala. 579, 601, 57 So. 942, 949 (1912) ], commenting upon the case of State ex rel. [Saltsman] v. Weakley, [153 Ala. 648, 45 So. 175 (1907) ], the court called attention to the fact in that case it was held `that indiscriminate classification as a mere pretext for the enactment of laws essentially local or special cannot be allowed....'
"And in [Weakley ], this court sounded a distinct note of warning to the lawmaking department against the passage of laws with classification so drawn as to be an evasion of the Constitution."
Reynolds v. Collier, 204 Ala. 38, 39, 85 So. 465, 466-67 (1920). In Reynolds, this Court analyzed a statute that fixed the salary of the probate judge in counties with a population between 23,150 and 23,250 people. That classification applied to only one county in AlabamaChilton. *857 This Court then used a two-part test (refined in City of Birmingham v. Moore, infra) to ascertain that the statute was premised on an arbitrary distinction and was thus a local act for purposes of § 110. As a result, the Court held that because the act had not been advertised, its adoption violated § 106 and the act was void. This Court concluded:
"Such legislation as we are here considering has been very properly characterized as `classification run mad.' To uphold it would be but to sanction the utter emasculation of these provisions of our Constitution, and this court will not hesitate to strike down an act so palpably violative of our fundamental law. As said by Justice Lumpkin of the Supreme Court of Georgia:
"`When the question is, whether we shall maintain a statute or the Constitution, which is a paramount law, and which we are constrained by our oath of office to support and defend we can not hesitate. We must maintain consciences void of offense, whatever we do or omit to do.' Prothro v. Orr, 12 Ga. 36, 40 [ (1852) ]."
Reynolds v. Collier, 204 Ala. at 40, 85 So. at 468.
In City of Birmingham v. Moore, 248 Ala. 422, 27 So.2d 869 (1946), the plaintiff Moore challenged a statute that authorized the establishment of redevelopment agencies in counties with populations of more than 300,000 residents. Only Jefferson County met that criteron. In refining the test set forth in such cases as Reynolds v. Collier, supra, State ex rel. Brooks v. Gullatt, 210 Ala. 452, 98 So. 373 (1923), and State ex rel. Saltsman v. Weakley (cited in the quotation from Reynolds v. Collier, supra), this Court held:
"[T]he conditions justifying such classification are equally well established by our cases. The difference in population must be substantial, and the classification must be made in good faith and must be reasonably related to the purpose to be effected by the act. If these conditions exist, the fact that at the time the law may be applicable to only one subdivision of the State will not suffice for its condemnation. On the other hand, if the classification is not in good faith, bears no reasonable relation to the difference in population upon which it rests in view of the purpose to be effected by such legislation, and was arbitrarily fixed, the law will be condemned as local, and as having been passed as merely under the guise of a general law in violation of the Constitution.
". . . .
"The act here under consideration shows upon its face that it attempts to make an arbitrary classification without proper relation to the subject matter. We are unable to see any logical relation between the classification here employed and the purpose to be attained....
". . . .
"The act before us cannot survive the test, heretofore stated, by which the character of an act, whether general or local, is to be determined. Judicial ingenuity would exhaust itself in the effort to find any rational basis for the classification it presents. Certainly the fact that the municipalities affected are in the largest county in Alabama bears no legitimate relation to the purpose of the act.
"In spite of our hesitancy to nullify legislative enactments, judicial candor will not permit us to overlook the obvious fact that this act, both in its conception and in its calculated operation, was local in character. We can only interpret this act as fixing a difference in population purely arbitrary and without pretext of reason or necessity, or *858 substantial merit, and therefore is a local law pure and simple [sic]. It is not saved by a classification reasonably related to its purpose and justifying the discrimination exhibited. The requirements of § 106 of the Constitution not having been met, the act here under consideration is void and must be stricken."
Moore, 248 Ala. at 423-25, 27 So.2d at 871-72 (citations omitted)(emphasis added).
In at least eight other cases over the past 51 years, this Court has held certain laws invalid, despite their designation as general, after concluding that they were local acts, under the standard announced in Moore. The combination of the arbitrary invocation of a population classification with the failure to properly advertise required the Court to hold them invalid. The criteria this Court adopted in Moore has now been written into the Alabama Constitution by Amendment 397.
In Couch v. Rodgers, 253 Ala. 533, 45 So.2d 699 (1950), this Court held invalid a law authorizing a "Barber's Commission" in counties with a population range of 46,500 to 48,000 people. This Court held that that classification was arbitrary because counties of sizes other than that of Cullman (to which alone the population requirement applied) had an equivalent need to regulate barbers. In Nelson v. State, 255 Ala. 141, 50 So.2d 401 (1951), this Court held invalid a law that permitted, in counties with more than 400,000 residents, the condemnation of property used to transfer or store lottery papers. The law applied only to Jefferson County. This Court, noting that this law was intended to supplement the existing prohibition of lotteries throughout Alabama, held: "The same considerations apply to such effort in all parts of the State alike so far as we can see." Nelson, 255 Ala. at 143, 50 So.2d at 401.
In Opinion of the Justices No. 139, 262 Ala. 425, 81 So.2d 295 (1955), this Court stated that a proposed law, which authorized branch offices for savings and loan institutions on the basis of a classification that applied only to Baldwin County, was a local law because there was "no reasonable basis for the limitation of the applicability of H. 85 to counties with a population of not less than 40,500 nor more than 45,000." 262 Ala. at 427, 81 So.2d at 297. In Smith v. Lancaster, 269 Ala. 579, 114 So.2d 568 (1959), this Court held invalid a law that authorized the licensure and regulation of plumbers in counties having a population between 80,000 and 94,000 people. This Court noted that the qualifications of plumbers was a legitimate concern throughout Alabama, although this act only applied to Etowah County:
"It is our view that the Act cannot survive [the Moore, supra,] test. Specifically (without passing on the other elements), we do not think the population classification is `reasonably related to the purpose to be effected by the act.'...
". . . .
"`Notwithstanding our aversion to the nullification of legislative enactments, judicial candor will not permit us to close our eyes to the patent fact that this act, both in its conception and in its calculated operation, was local in character....'"
Smith, 269 Ala. at 582-84, 114 So.2d at 570-71 (quoting Vaughan v. State, 212 Ala. 258, 259, 102 So. 222, 223 (1924)) (citations omitted).
In McDowell v. Columbia Pictures Corp., 281 Ala. 438, 203 So.2d 454 (1967) this Court affirmed a judgment of the Jefferson Circuit Court. That court had struck down a law that authorized a "movie review board" in counties with more than 600,000 people; this classification *859 caused the law to apply to Jefferson County alone. This Court approved the order of the circuit court:
"`The objective of the Statute is a most salutary one, being the conservation of the morals and welfare of children under 18 years of age. Such an objective would be of equal concern throughout all of Alabama, including other populous counties beside Jefferson.
"`Certainly, children reside throughout the state, and motion pictures are exhibited throughout the entire state, in the main being identical wherever shown....
"`There is nothing about the subject matter of the Statute in question which is peculiar to a particular locality. It is a matter of statewide concern....'"
McDowell, 281 Ala. at 441-42, 203 So.2d at 456-57.
In Duncan v. Meeks, 281 Ala. 452, 204 So.2d 483 (1967), this Court held invalid another law that applied only to Jefferson County. The statute in that case precluded electors in counties with more than 500,000 inhabitants from being able to use one lever to cast a straight party ticket. This Court held: "We are unable to see any logical relation between the classification here employed and the purpose to be attained...." The same considerations were equally valid in other counties outside the statute's population classification. Duncan, 281 Ala. at 456, 204 So.2d at 485. In Masters v. Pruce, 290 Ala. 56, 274 So.2d 33 (1973), this Court held invalid a zoning statute that applied only in counties with at least 600,000 peopleagain, only Jefferson County. The Court's rationale followed that of Moore, supra. In Jefferson County Board of Health v. City of Bessemer, 293 Ala. 237, 301 So.2d 551 (1974), this Court held invalid a statute providing financing for boards of health in counties with populations of more than 500,000 residents. Only Jefferson County fell within that classification, and the Court determined that that classification was not a bona fide basis for the statute, given the equivalent policy concerns in other counties.
This Court has ruled in other cases that laws applying to only one county or city were general acts, but all of those cases are easily distinguishable from this case. The purpose of the statute challenged in those cases was genuinely relevant to only one governmental entity. See, e.g., State v. Burchfield, 218 Ala. 8, 117 So. 483 (1928)(law prohibiting owners from allowing "stock" to run at large, in any county whose population exceeds 150,000 people), Ex parte Ashton, 231 Ala. 497, 165 So. 773 (1936)(law authorizing circuit courts in counties with populations over 300,000 to consolidate common causes of action), and Smith v. Pullman, Inc., 280 Ala. 295, 193 So.2d 516 (1967)(law precluding the accrual of property taxes while owner's appeal is pending). In the present case, however, the purpose of the act was to deal with the environmental and economic impact related to storm water and its drainage. The policy that underlies this statute is equally valid for other densely populated urban areas. These areas include, but are not limited to, Montgomery, Mobile, and Huntsville. Act No. 95-775 is therefore a local act, not a general act. Consequently, the failure to advertise it void ab initio.
Second, the codification of an invalid statute cannot cure a constitutional defect. The United States Supreme Court resolved this issue 198 years ago in Marbury v. Madison, 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60 (1803). In Marbury v. Madison, the Supreme Court faced a conflict between a statute and a provision of the United States Constitution. Chief Justice Marshall, for a unanimous Court, wrote:

*860 "The question, whether an act, repugnant to the constitution, can become the law of the land, is a question deeply interesting to the United States; but, happily, not of an intricacy proportioned to its interest....
". . . .
"... The constitution is either a superior, paramount law, unchangeable by ordinary means, or it is on a level with ordinary legislative acts, and, like other acts, is alterable when the legislature shall please to alter it.
"If the former part of the alternative be true, then a legislative act contrary to the constitution is not law: if the latter part be true, then written constitutions are absurd attempts, on the part of the people, to limit a power in its own nature illimitable.
"Certainly all those who have framed written constitutions contemplate them as forming the fundamental and paramount law of the nation, and, consequently, the theory of every such government must be, that an act of the legislature, repugnant to the constitution, is void.
". . . .
"It is emphatically the province and duty of the judicial department to say what the law is....
". . . .
"Those, then, who controvert the principle that the constitution is to be considered, in court, as a paramount law, are reduced to the necessity of maintaining that courts must close their eyes on the constitution, and see only the law.
"This doctrine would subvert the very foundation of all written constitutions. It would declare that an act which, according to the principles and theory of our government, is entirely void, is yet, in practice, completely obligatory. It would declare that if the legislature shall do what is expressly forbidden, such act, notwithstanding the express prohibition, is in reality effectual. It would be giving to the legislature a practical and real omnipotence, with the same breath which professes to restrict their powers within narrow limits. It is prescribing limits, and declaring that those limits may be passed at pleasure.
"That it thus reduces to nothing what we have deemed the greatest improvement on political institutions, a written constitution, would of itself be sufficient, in America, where written constitutions have been viewed with so much reverence, for rejecting [this] construction. But the peculiar expressions of the constitution of the United States furnish additional arguments in favour of its rejection."
Marbury, 5 U.S. at 176-78. See also Ex parte James, 713 So.2d 869, 879 (1997)("Long before Alabama acquired statehood, judicial decisions had recognized the poweras well as the dutyof the judiciary to review, and if necessary, nullify, acts of the legislature it deemed to be inconsistent with the fundamental law of the land.").
Consistent with Marbury v. Madison, James, and Prothro (quoted in Reynolds v. Collier, supra), I conclude that the Legislature's codification of Act No. 95-775 into § 11-89C-1 et seq., Ala.Code 1975, could not cure the constitutional defect that arose when the Legislature adopted this local act, even though it had not been advertised as mandated by Amendment No. 341. The main opinion conflicts with the precedent established by Marbury v. Madison and the cases following it. The codification of Act No. 95-775 could not supersede Amendment 341 to the Constitution. To the degree that prior cases of this Court or our Courts of Appeals conflict with this rule, those cases (including, *861 but not limited to, Ex parte State Department of Revenue, 683 So.2d 980, 982 (Ala. 1996), Ex parte Coker, 575 So.2d 43 (Ala. 1990), Fuller v. Associates Commercial Corp., 389 So.2d 506, 509 (Ala.1980), Opinion of the Justices No. 81, 249 Ala. 511, 31 So.2d 721 (1947), Opinion of the Justices No. 63, 244 Ala. 384, 13 So.2d 762 (1943), State v. Golden, 531 So.2d 941 (Ala.Crim. App.1988)), should be overruled.
In addition, I note an issue in this case that the parties have not raised, but which should be dispositive. Act No. 95-775, codified as § 11-89C-1 et seq., Ala.Code 1975, authorized the creation of a "Storm Water Management Authority" by "[t]he governing bodies of all Class 1 municipalities within the state and the county governing bodies in which the Class 1 municipalities are located and the governing bodies of all municipalities located [wholly or partially] within those counties...." § 11-89C-2.
Sixteen years ago, this Court established this precedent: "[I]n the absence of a designation to the contrary the population of cities for the purposes of Act No. 84-808 is determined by the last preceding decennial census." Alabama Citizens Action Program v. Kennamer, 479 So.2d 1237, 1242 (Ala.1985) (emphasis added). Two years later, this Court carved out an exception to that rule, an exception not here relevant, where there has been an "interim census conducted by the United States Department of Commerce, Bureau of the Census." Dennis v. Pendley, 518 So.2d 688, 690 (Ala.1987).
Section 11-40-12, Ala.Code 1975, defines a "Class 1 municipality" as any city "with a population of 300,000 inhabitants or more." The population of Birmingham, however, as determined by the 1990 Federal Census, was 265,965 people. The population of Birmingham, as determined by the 2000 Federal Census (preliminary), was 242,820. Alabama Citizens Action Program v. Kennamer, 479 So.2d 1237, 1242 (Ala.1985) (holding that in the absence of a designation in the statute itself the population of a city is "determined by the last preceding decennial census").
Consistent with Moore, supra, I take judicial notice of the fact that Birmingham is the largest city in our state. Act No. 95-775 was enacted in 1995. Because no city in Alabama has met the criterion for being a Class 1 municipality, since at least 1990, Act No. 95-775, did not, and still does not, apply anywhere in Alabama.
Accordingly, this Court should hold that Act No. 95-775 was void ab initio, for three separate reasons. First, Act No. 95-775 is a local act that was not advertised this failure was an explicit violation of Amendment 341 of the Alabama Constitution. Second, the codification of Act No. 95-775 could not supersede a provision of the Alabama Constitution. Third, this Court's analysis of those issues the parties here raised is made pointless by the threshold defect inherent in a law that limits its scope to counties containing Class 1 municipalitieswhen Alabama does not have a Class 1 municipality and has not had one since before this law was enacted.
For these reasons, I respectfully dissent.
NOTES
[1] The trial court certified the class for the limited purpose of determining the facial validity of the Storm Water Act, and no argument is made on this appeal regarding the propriety of that class certification.
[2] The defendants stipulated that the act was not advertised as required by § 106, as amended by Amendment No. 341, which provides as follows:

"No special, private, or local law shall be passed on any subject not enumerated in section 104 of this Constitution, except in reference to fixing the time of holding courts, unless notice of the intention to apply therefor shall have been published, without cost to the state, in the county or counties where the matter or thing to be affected may be situated, which notice shall state the substance of the proposed law and be published at least once a week for four consecutive weeks in some newspaper published in such county or counties or if there is no newspaper published therein, then by posting the said notice for two consecutive weeks at five different places in the county or counties prior to the introduction of the bill; and proof that said notice has been given shall be exhibited to each house of the legislature through a certification by the clerk of the house or secretary of the senate that notice and proof was attached to the subject local legislation and the notice and proof shall be attached to the original copy of the subject bill and shall be filed in the department of archives and history where it shall constitute a public record. The Courts shall pronounce void every special, private, or local law which the journals do not affirmatively show was passed in accordance with the provisions of this section."